**Jerry O. JAMES, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93-392.

United States Court of Veterans Appeals.

April 7, 1995.

M. Marcelin McKie, Washington, DC, was on the brief for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Peter M. Donawick, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Judges.

NEBEKER, Chief Judge:

The appellant, Jerry O. James, appeals a January 13, 1993, Board of Veterans' Appeals (Board or BVA) decision that he was not entitled to a total disability evaluation based on individual unemployability (TDIU). The appellant argues for reversal or, in the alternative, for remand. The Secretary argues that the Board's decision should be vacated and the matter remanded for an adequate statement of reasons or bases and because VA failed in its duty to assist the veteran in developing his claim. After consideration of the record on appeal, and the briefs of the parties, we reverse the Board's decision and remand the matter for the following reasons.

## I.  FACTS

The appellant had active service from August 1977 to February 1981. R. at 17. While in the service, he was diagnosed with a seizure disorder and was restricted from being assigned to any duty where a sudden loss of consciousness would be a hazard. R. at 93. He was later diagnosed with narcolepsy ("a condition characterized by brief attacks of deep sleep," WEBSTER'S MEDICAL DESK DIC-

TIONARY 464 (1986)). *See, e.g.,* R. at 123, 130, 131. In April 1981, the VA regional office (RO) rated him as 20% disabled from discharge due to his narcolepsy. R. at 180. In May 1982, the appellant filed a Notice of Disagreement with the 20% rating. He was given an examination and thereafter the RO assigned him a rating of 60% for narcolepsy-cataplexy from May 1982. R. at 212. (Cataplexy is "a condition in which there are abrupt attacks of muscular weakness and hypotonia triggered by an emotional stimulus such as mirth, anger, fear, or surprise. It is often associated with narcolepsy." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 282 (27th ed. 1988).) In August 1984, the appellant first submitted a claim for TDIU. R. at 218–19. The RO found that the evidence did not establish that the appellant was unemployable due to his service-connected disability. R. at 230. On appeal to the Board, the BVA denied his claim for TDIU due to his narcolepsy in July 1986. R. at 258–61. In November 1987, the RO again denied his claim for TDIU. R. at 280–81. In October 1988, the BVA remanded his claim for TDIU for the RO to associate the appellant's vocational rehabilitation information with his claims folder. R. at 319. On remand, the RO continued its denial of his claim for TDIU, and the Board affirmed. R. at 333–39.

In January 1990, the appellant again requested TDIU. R. at 341. The RO denied his claim. R. at 361. In 1991, the Board remanded his claim to the RO to obtain a social and industrial survey of his level of functioning, medical records, and a VA examination to determine the nature and extent of his narcolepsy and cataplexy. R. at 388. On remand, the RO continued the 60% rating for narcolepsy and found that TDIU was not warranted. R. at 474–76. The BVA affirmed in the decision on appeal here.

## II. ANALYSIS

VA regulations provide that:

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities: *Provided* That, if there is only one such disability, this disability shall be ratable at 60 percent or more....

38 C.F.R. § 4.16(a) (1994). We review the Board's determination that the appellant has not been rendered unemployable because of his service-connected disabilities under the "clearly erroneous" standard of review; i.e., we will affirm the BVA's conclusion if there is a plausible basis in the record for that conclusion. 38 U.S.C. § 7261(a); *Pratt v. Derwinski,* 3 Vet.App. 269, 271 (1992).

In the instant case, the Board concluded that, while it agreed that the appellant's condition made it impossible for him to work with heavy machinery, it was not convinced that there were not some jobs he could do. In its decision, it pointed out that a VA social and industrial survey noted that the appellant had performed some childcare and household work since 1986, that he had admitted to using alcohol although he had been warned by doctors not to, and that a urinalysis revealed that he had smoked marijuana. However, the Board does not point to any medical evidence to suggest that these are the reasons, as opposed to his service-connected narcolepsy, that he cannot work. *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991). Nor is there any support in its decision for the Board's conclusion that the appellant had abandoned his attempts to find work. The Board suggested that the appellant was content with the amount of disability benefits he was receiving from VA ($808.00 per month) and the Social Security Administration ($525.00 per month). R. at 9, 10.

The Secretary argues for a remand, conceding that the Board's reasons and bases for its decision were not adequate and that VA failed to fulfill its duty to assist by not securing and examining the appellant's Social Security Administration records. *See Clarkson v. Brown,* 4 Vet.App. 565, 567–68 (1993) ("VA has a duty to assist in gathering social security records when put on notice that the veteran is receiving social security benefits."). We agree with the Secretary that the Board's decision failed to articulate reasons and bases for its factual and legal conclusions as required by 38 U.S.C. § 7104(d)(1) and that VA failed to fulfill its duty to assist per

38 U.S.C. § 5107(a). But the Board's decision warrants reversal, not remand, because there is no evidence to support the Board's conclusion. *See Gilbert v. Derwinski,* 1 Vet. App. 49, 52 (1990). The Board blatantly ignored many pertinent facts, for example, the fact that the appellant had testified that he was interested in working. Nor did the Board discuss the fact that the appellant's driver's license had been suspended because of his medical condition or the fact that VA had denied vocational rehabilitation under chapter 31 of title 38 of the U.S.Code because it was determined that his condition made training infeasible. *See* R. at 265, 487. Additionally, the Board ignored the conclusion of the VA social and industrial survey: "Mr. James is a 33 year old black male who has been unable to work due to narcolepsy. He cannot operate equipment because he falls asleep. From his statements and the medical records, he has to be very careful because he suddenly goes to sleep." R. at 419. The Board also ignored the letter written by a potential employer where the appellant had applied for work several times. R. at 264. That potential employer stated that, even were there any job openings, no offer would be made to the appellant since all jobs at that plant involve working with machinery, chemicals, and resin, much of it very hot and his condition would pose an unacceptable risk of injury. *Id.* More significantly, the note written by the principal of the elementary school where the appellant was briefly employed explained that the appellant could not maintain a working schedule, which indicates that he would be precluded from all types of gainful employment, not just those jobs involving machinery. R. at 266.

In *Beaty v. Brown,* 6 Vet.App. 532 (1994), this Court held that the Board's finding that TDIU was not warranted did not have a plausible basis in the record, and, therefore, reversal of the BVA's decision was necessary. The appellant in *Beaty* had had to stop farming because of problems with chronic infections and irritation in his service-connected empty left eye socket from the dust and other irritants he encountered while plowing. He had only farmed for 40 years and had only an eighth grade education. He had tried to work as a mechanic but was unable to because of his service-connected left hand condition and his inexperience. This Court found several of the BVA's conclusions regarding Mr. Beaty's ability to be employed to be unsubstantiated by the record. The *Beaty* opinion noted that, although in previous TDIU cases in which the BVA was reversed there was usually an "unequivocal professional opinion of record that the veteran was unemployable," there was no requirement that there be such an opinion. *Id.* at 539. On the facts of *Beaty,* where there was no evidence contradicting the veteran's claim for TDIU, reversal was warranted despite the fact that there was no doctor's statement that the appellant was unemployable.

### III. CONCLUSION

This case presents a situation nearly identical to that in *Beaty* in which "all the evidence supported the veteran's claim for a TDIU rating." *Beaty,* 6 Vet.App. at 538. We hold that the Board's decision to the contrary does not have a plausible basis. *See Gilbert,* 1 Vet.App. at 52–53; *Pratt,* 3 Vet. App. at 271. Accordingly, the Board's decision is REVERSED and the matter REMANDED. We do not reach the appellant's contention that the wrong Diagnostic Code has been applied, as that issue was not raised below. *See Manio v. Derwinski,* 1 Vet.App. 140, 144 (1991). Additionally, while the appellant argues that the Board's decisions are clearly erroneous, Appellant's brief (Br.) at 14, the Secretary, in his brief, seems to read the appellant's brief as raising a clear and unmistakable error claim and asserts that under *Smith v. Brown,* 35 F.3d 1516 (Fed. Cir.1994), only agency of original jurisdiction decisions may be reviewed by this Court for clear and unmistakable error, Secretary's Br. at 19, n. 3. In any event, we decline to reach any argument regarding clear and unmistakable error as no such argument was raised below. *Fugo v. Brown,* 6 Vet.App. 40, 43–44 (1993); *Russell v. Principi,* 3 Vet.App. 310, 315 (1992) (en banc).