Donald Ray BOWLING, Appellant,

v.

Anthony J. PRINCIPI, Secretary of
Veterans Affairs, Appellee.

No. 99–2264.

United States Court of Appeals
for Veterans Claims.

Argued Feb. 1, 2001.

Decided May 8, 2001.

Stephen L. Purcell, of Washington, D.C., for the appellant.

Christine M. Cote, with whom Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; and Michael A. Leonard, Deputy Assistant General Counsel, were on the pleadings, all of Washington, D.C., for the appellee.

Before KRAMER, Chief Judge, and HOLDAWAY and STEINBERG, Judges.

STEINBERG, Judge, filed the opinion of the Court. KRAMER, Chief Judge, filed an opinion concurring in the result.

STEINBERG, Judge:

The appellant, Vietnam veteran Donald R. Bowling, appeals through counsel a July 12, 1999, Board of Veterans' Appeals (Board or BVA) decision that determined that new and material evidence had not been presented to reopen his previously and finally disallowed claim for Department of Veterans Affairs (VA) service connection for Meniere's disease; denied a rating above 50% for his VA service-connected post-traumatic stress disorder (PTSD); and denied a rating of total disability based on individual unemployability (TDIU). Record (R.) at 5. The appellant has filed a brief and a reply brief, and the Secretary has filed a brief. On January

18, 2001, the Secretary filed a motion for a partial remand, as to which the appellant has filed an opposition. At oral argument on February 1, 2001, the appellant's counsel expressly abandoned the Meniere's-disease claim, as to which he had advanced no argument in his briefs, and the Court will thus not review the Board's denial of that claim. *See Cole v. West,* 13 Vet.App. 268, 273 (1999). This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will dismiss the appeal in part, reverse the BVA decision in part, and vacate it in part, and remand the increased-rating and TDIU-rating claims.

## I. Background

The veteran had active U.S. Army service from February 1965 to February 1967 and from March 1968 to July 1971. R. at 133. He served two tours in Vietnam and was awarded the Purple Heart. R. at 695. In July 1991, a VA regional office (RO) awarded him service connection for PTSD, rated as 10% disabling, and malaria, rated as 0% disabling. R. at 304. In December 1993, the VARO increased to 30% his PTSD rating but denied a higher rating. R. at 394. He timely appealed that decision to the BVA. R. at 400, 412.

In September 1995, the veteran testified under oath before the RO that he had "had troubles with supervisors on almost every job" that he'd had since his discharge and that he had recently been asked to leave a job with a trucking company due to a verbal altercation with a supervisor. R. at 418. A report of a November 1995 VA compensation and pension examination of the veteran recorded his subjective complaints as including memory impairment; "severe insomnia"; frequent nightmares; "flashbacks almost every day"; "poor" appetite and "low" energy; "recurrent thoughts of suicide"; and a fear of "driv[ing] for long distances because of a past history of lapses, flashbacks[,] and accidents". R. at 442. The examining physician's objective findings included that

the veteran had "intrusive thoughts about Vietnam" and "no hallucinations [but did have] have vivid reexperiences during flashbacks". The physician also noted as an objective finding that the veteran had "report[ed] difficulties in losing concentration when he tries to read, [and] losing focus when he is doing activities such as driving." *Ibid.* The pertinent diagnoses provided were: PTSD "chronic, severe; interferes with both work and interpersonal relationships"; "major depression, recurrent"; "Global Assessment of Functioning [ (GAF) ] is 55–60." R. at 442–43.

In February 1997, the Board remanded the veteran's PTSD increased-rating claim in order, inter alia, to obtain a "VA psychiatric examination to determine the current nature and severity of" the veteran's PTSD. R. at 477. A report of the resulting June 1997 VA examination noted subjective complaints including nightmares "three or four times per week", feeling "extremely nervous and aggravated when he has to see people", and that "[h]e had to give up working because of getting into arguments with people and he was losing his temper easily at work." R. at 527. The examiner's objective findings included that the veteran had "a long history of extensive symptoms of PTSD with dissociative experience, as well as . . . extreme symptoms of PTSD" that had "interfered in his social and occupational functioning to the extent where he is totally disabled." R. at 528. The diagnosis provided was: "Chronic [PTSD]", with a GAF score of 45. *Ibid.*

In September 1997, the veteran filed a claim for a TDIU rating; on the application form, he indicated that from "1994" to "present" he had been employed by a hospital as an "aide" for 40 hours per week, but had lost 18 months of time from that job due to illness. R. at 536. Subsequently, the RO in October 1997 increased the veteran's rating to 50% but denied a TDIU rating. R. at 576. On appeal, the Board determined in June 1998 that an earlier effective date was warranted for the 50%

PTSD rating and remanded the issue of a rating above 50% in order for the RO to arrange for, inter alia, a VA psychiatric examination at which the examiner was to conform with the following instruction:

> The examiner is asked to express an opinion as to which of the following criteria best describes the veteran's psychiatric disability picture due solely to *PTSD and any related disorders:*
>
> . . . .
>
> (4) occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory; impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships; or
>
> (5) occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, mood due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); and the inability to establish and maintain effective relationships.

R. at 630–31. (The Court notes that the symptoms listed in groups (4) and (5) are virtually verbatim the criteria listed in the current diagnostic code (DC) 9411 for, respectively, a 50% and a 70% rating for PTSD. 38 C.F.R. § 4.130, DC 9411 (2000).)

In August 1998, a VA social worker, in a letter addressed "to whom it may concern", stated that the veteran had been "evaluated regarding the distress in his life at this time" and "needs to be on leave from employment/work site for the next thirty days while he is continuing medical interventions in his behalf." R. at 642. Later that month, the veteran filed a new claim for a TDIU rating. R. at 644–45. In September 1998, a VA psychiatrist wrote the following letter to the veteran: "This letter is to provide you with documentation that effective today, and until further notice, you are considered unable to work for medical reasons, due to the acute symptoms of your [PTSD]." R. at 664. A September 9, 1998, VA medical record noted that the veteran displayed a "[s]hort attention span" and "[p]oor concentration", which formed a barrier to his ability to learn (R. at 690), and assessed a GAF score of "50 now and 60 for past year" (R. at 691). A VA medical record dated October 9, 1998, assessed the veteran as having a GAF score of 60, with 60 over the past year. R. at 690.

In response to an inquiry from an RO, the veteran's employer reported in November 1998 that the veteran was "off on disability due to illness" but it was expected that he would "be returning" to work. R. at 674. The veteran's employer indicated that the veteran had last worked on August 1, 1998, but was still receiving a paycheck as of November 20, 1998. R. at 674. The employer also indicated that the veteran had lost 216 work hours (27 eight-hour work days) over the course of the prior year due to illness. R. at 674. Also provided was a copy of an October 1998 letter from the employer to the veteran notifying him that he had been placed "on official temporary disability status effective October 1998 ", and was eligible for employee benefits equal "to 5 (five) weeks at 75% of salary and 16 (sixteen) weeks at 50%." R. at 676.

A VA social and industrial survey provided by a VA social worker on January 25, 1999, reported that the veteran lived alone and had been on "medical leave from his job" since August 1998. R. at 703. The veteran described subjective complaints similar to those previously reported at the VA examinations described above, and also stated that he had been "fired in 1990 from [a job as a salesman] . . . due to use of profanity after having a disagreement with [his] supervisor." R. at 704. The veteran also related that while working as a truck driver in 1992, he had "back[ed] up the truck for no reason, hitting a truck parked behind him" and that as a result "his supervisor suggested he quit". *Ibid.* The social worker opined that the veteran's symptoms had increased in severity in recent years and that "[h]is ability to maintain employment has been severely affected by" his PTSD. R. at 706. The social worker stated: "Mr. Bowling will have difficulty learning new skills in a vocational rehabilitation program due to his poor concentration. His current GAF score is 50; and 53 in the past year." R. at 706.

On January 28, 1999, the veteran was examined by a VA clinical psychologist, who assessed a GAF score of 50, "represent[ing] moderate symptoms (depression, nervousness, isolation, disengagement, worry, decreased concentration, difficulty sleeping, nightmares . . .), moderate to serious impairment in social functioning, and serious impairment in occupational functioning." R. at 700. The examiner noted: "Highest GAF in past year: 53". R. at 701. As to the Board's June 1998 remand order, the examiner concluded: "In response to the REMAND request to express an opinion as to which criteria best describe the veteran's psychiatric disability due solely to PTSD and any related disorders, it is felt that description number (4) best represents his condition." R. at 700. However, the examiner added: "Some of the criteria from number (5) were met: near-continuous depression affecting the ability to function independently, appropri-

ately and effectively, occasional impaired impulse control, and difficulty in adapting to stressful circumstances (including work), and the inability to establish and maintain effective relationships." R. at 701.

In February 1999, the RO received several documents relating to the veteran's case, including: A request to "expedite" the veteran's appeal "due to financial hardship" in part because his disability benefits had expired; a copy of a July 1998 bankruptcy-court decision discharging him from his debts; and letters from his employer regarding the veteran's "pattern of absenteeism". R. at 709–11. Later that month, the RO denied eligibility for an increased or TDIU rating. R. at 727.

In the July 12, 1999, BVA decision here on appeal, the Board determined that although the veteran had some of the symptoms for a 70% rating, he also lacked some of symptoms required for a 50% rating and that "the criteria for the 50[%] rating are more nearly approximated tha[n] those for any higher rating". R. at 26. As to the veteran's claim for a TDIU rating, the BVA determined that his service-connected malaria had been rated as 0% and had been completely nondisabling "over the rating period". R. at 28. (This finding has not been disputed by the parties, and the Court will not further consider the veteran's malaria in connection with this opinion.) As to the effects of the veteran's PTSD symptomatology, the Board found: "[Although] the veteran has lost some time from work due to his PTSD, he has not lost his job and remains employed. Further, when he does lose a job due to his PTSD, he has shown an ability to obtain other employment." R. at 28. In light of those findings, the BVA denied both a scheduler rating above 50% and a TDIU rating. R. at 30.

## II. Analysis

### A. TDIU Rating

*1. Applicable law.* Pursuant to 38 C.F.R. § 4.16(a) (2000), a TDIU rating will

be awarded to a veteran who is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities" and who has a single service-connected disability "ratable at 60 percent or more" or who has "two or more [service-connected] disabilities" with one "ratable at 40 percent or more . . . and sufficient additional disability to bring the combined rating to 70 percent or more". In addition, paragraph (b) provides:

> (b) It is the established policy of the Department of Veterans Affairs that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Therefore, rating boards should submit to the Director, Compensation and Pension Service [ (C & P Director) ] for extra-scheduler consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in paragraph (a) of this section. The rating board will include a full statement as to the veteran's service-connected disabilities, employment history, educational and vocational attainment and all other factors having a bearing on the issue.

38 C.F.R. § 4.16(b) (2000).

There is no dispute that this appeal involves paragraph (b), because the veteran does not at this time meet the scheduler criteria set forth in paragraph (a). The Court notes that our remand, in part II.B., below, of the veteran's increased-rating claim does not obviate our duty to consider the issue of TDIU under § 4.16(b), notwithstanding that the remand could produce a 70% rating and, in turn, that the Board would then be required to consider a TDIU award pursuant to paragraph (a). *See Colayong v. West,* 12 Vet.App. 524, 537 (1999) ("[b]ecause we cannot, at this time, definitively conclude that the appellant will be awarded a 100% scheduler or extras-chedular rating on remand, we thus proceed to consider the TDIU rating claim").

■ The determination under § 4.16(b) whether a veteran is unable to secure and follow substantially gainful employment is a question of fact subject to review in this Court under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4), which authorizes the Court to "hold unlawful and set aside [a finding of material fact made by the BVA in reaching a decision] . . . if the finding is clearly erroneous". 38 U.S.C. § 7261(a)(4); *see Solomon v. Brown,* 6 Vet.App. 396, 402 (1994). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *see also Hensley v. West,* 212 F.3d 1255, 1263 (Fed.Cir.2000) ("[o]n factual matters, the findings of the BVA may be overturned by the Court of Appeals for Veterans Claims only if they are clearly erroneous"); *Gilbert v. Derwinski,* 1 Vet. App. 49, 52 (1990) (quoting *U.S. Gypsum Co.*). In determining whether a finding is clearly erroneous and should be overturned, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA . . ., [the Court] cannot overturn them." *Gilbert,* 1 Vet.App. at 53. Also, the Court has the authority under 38 U.S.C. § 7252(a) to reverse Board decisions "as appropriate".

■ In addition, the Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown,* 7 Vet.App. 517, 527 (1995); *Gilbert,* 1 Vet. App. at 57. To comply with this requirement, the Board must analyze the credibil-

ity and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed. Cir.1996) (table); *Gilbert, supra.*

■ *2. Board's finding that veteran "remains employed".* The Board's decision to deny the veteran a TDIU rating rested on two findings of fact: First, the BVA found that "the veteran ... has not lost his job and remains employed". R. at 28; *see also* R. at 712–13 (February 1999 and November 1998 letters from veteran's employer indicating that, due to his absences from work, he was being placed on, respectively, three-day suspension and attendance probation). Second, the Board found that "when he does lose a job due to his PTSD, he has shown an ability to obtain other employment." R. at 28; *see also* R. at 24 (Board finds that veteran has "alternative employment possibilities"). Based on these two findings, the Board considered the veteran ineligible for a TDIU rating under 38 C.F.R. § 4.16(b) (R. at 28 ("extraschedular consideration is not warranted")) and thus did not submit the case to the C & P Director. It thus made an implicit determination that the evidence in this case did not warrant submission to the C & P Director for consideration under § 4.16(b).

In making the first factual finding, that the veteran "remains employed", the Board did not consider employment specifically in the context of § 4.16(b). Eligibility for TDIU under § 4.16(b) is premised on the claimant's being "unable to *secure and follow* a *substantially gainful occupation* by reason of service-connected disabilities". 38 C.F.R. § 4.16(b) (emphasis added). The term "substantially gainful occupation" is not defined by VA regulation; however, the Court has held that the term refers to, at a minimum, the ability to earn "a living wage". *Moore (Robert) v. Derwinski,* 1 Vet.App. 356, 358 (1991).

Recently, the Court held that a person is engaged in a "substantially gainful occupation" when that occupation "provides annual income that exceeds the poverty threshold for one person". *Faust v. West,* 13 Vet.App. 342, 355–56 (2000) (emphasis added). In this case, the Board reported the veteran's statement to the VA psychologist in January 1999 that the veteran "was receiving *no* income from employment". R. at 16 (emphasis added); *see also* R. at 699. The Board at no time made any finding of fact to the contrary, and there is no evidence in the record on appeal (ROA) to the contrary or to suggest that since January 1999 the veteran has earned any income from employment. *See, e.g.,* R. at 710 (February 1999 letter from veteran indicating that he had been "out of work since Aug. 1998"); R. at 712 (February 1999 letter from veteran's employer regarding veteran's absenteeism); R. at 727 (February 1999 Supplemental Statement of the Case noting that veteran "has taken a leave of absence from his job ... effective August 1, 1998"). At least since January 1999, then, although the veteran may be considered in some sense to have been technically still "employed", there is no evidence that he has been earning either income in excess of the poverty threshold or a living wage. Thus, the Board's finding that the veteran was "employed" had little relevance to his eligibility for a TDIU rating under 38 C.F.R. § 4.16(b). *See Faust* and *Moore (Robert),* both *supra.*

■ *3. Board's finding that veteran "has shown an ability to obtain other employment".* The other factual predicate for the Board's denial of a § 4.16(b)-TDIU rating, that the veteran "has shown an ability to obtain other employment" (R. at 28), is relevant to the criterion of § 4.16(b) that a TDIU claimant be "unable to secure and follow a substantially gainful occupation." The closest that the Board came to substantiating this finding is the following, which appears to have been a conclusion reached for purposes of rejecting the ap-

plicability of an extraschedular rating under 38 C.F.R. § 3.321(b) (2000): "Medical evidence that the Board has found persuasive also does *not show* that he is currently *unable* to be working at that job, or that he is *unable* to work in sales for an employer whom he trusts, or that he is *unable* to do construction work (other than as a truck driver), or be self employed." R. at 29 (emphasis added). However, the Board's use of double negatives ("not shown" and "unable") to suggest the feasibility of some of the veteran's past occupations reveals that the Board is relying on the *absence* of evidence rather than on any affirmative evidence of employability. Absent any such evidence, the Board's speculation cannot form the basis for a denial of the veteran's TDIU claim. *See James v. Brown,* 7 Vet.App. 495, 497 (1995) (reversing denial of § 4.16(a) TDIU-rating claim when Board "was not convinced that there were not some jobs [that the applicant] could do" but did not cite any evidence in support of its conclusion); *Brown (Mitchell) v. Brown,* 4 Vet.App. 307, 309 (1993) (reversing denial of § 4.16(a) TDIU-rating claim because "[t]he BVA, in speculating on [the veteran's] employability, did not point to a single piece of evidence supporting its conclusion that the veteran is able to pursue substantially gainful employment"); *Gleicher v. Derwinski,* 2 Vet.App. 26, 28 (1991) ("to merely allude to educational and occupational history, attempt in no way to relate these factors to the disabilities of the appellant, and conclude that some form of employment is available, comes very close to placing upon the appellant the burden of showing he can't get work").

The Secretary's counsel contended at oral argument that some medical evidence suggested that the veteran had been found to be unemployable only temporarily and that it was thus plausible for the Board to conclude that he was not permanently unemployable and is now employable. *See* R. at 25 ("the medical evidence of record indicates that [the veteran] had been told to stay off work only until January 3, 1999").

That BVA conclusion was necessarily based on the Board's own evaluation of the veteran's capability for work because there is no medical opinion of record indicating that the veteran was capable of employment as of that date or any other prior to the July 1999 BVA decision. To the contrary, the most recent evidence of record, i.e., both the January 1999 VA psychologist's examination report and the January 1999 VA social and industrial survey, suggests that the veteran is *not* capable of securing and following his prior occupations. *See* R. at 700 (January 1999 VA psychologist's report that veteran suffers "serious impairment in occupational functioning"); R. at 706 (January 1999 VA social and industrial survey indicating that "[h]is ability to maintain employment has been severely effected [sic] by" his PTSD and that he "will have difficulty learning new skills in a vocational rehabilitation program due to" his PTSD). The Board's unsupported evaluation of the veteran's unemployability is impermissible. *See Pond v. West,* 12 Vet.App. 341, 345 (1999) (BVA may reject favorable, competent medical evidence only based on independent medical evidence); *Beaty v. Brown,* 6 Vet.App. 532, 537 (1994) (reversing when BVA found claimant capable of securing or following substantially gainful employment under § 4.16(a) without providing sufficient factual basis for its finding, and noting that "it is the Board's task to make findings based on evidence of record—not to supply missing facts").

In an attempt to discount the above quoted evaluations from the January 1999 VA social and industrial survey, the Board stated: "The social worker's January 1999 characterization of the veteran's disability as severe is . . . discounted in light of the . . . fact that in making that estimation *the social worker only considered the veteran's current work situation and not all of his employment possibilities.*" R. at 24 (emphasis added). For the following reasons, the Board's finding of fact regarding the social worker's assessment in these

respects is clearly erroneous and must be set aside. *See* 38 U.S.C. § 7261(a)(4); *U.S. Gypsum Co.*, *Hensley*, *Solomon*, and *Gilbert*, all *supra*. The record shows that the VA social worker's January 1999 report specifically referred to the veteran's past employment as a sales person from 1988–90 and stated that he had been "fired in 1990 ... due to use of profanity after having a disagreement with [his] supervisor." R. at 704. The social worker also noted that the veteran had worked as a truck driver from 1990 to 1992 but found that "he is unable to continue with any employment that requires driving". R. at 704, 706.

In any event, even if it were so (and the record does not support such a conclusion) that the social worker had not considered "*all* of [the veteran's] employment possibilities" (emphasis added), there is *no* evidence of record that any competent professional made such an assessment and found that the veteran was capable of securing and following any of those past jobs, and the Board was thus without any basis for the conclusion that it reached regarding employment alternatives. See *James*, *Brown (Mitchell)*, and *Gleicher*, all *supra*. Moreover, "an unequivocal professional opinion ... that the veteran was unemployable" is not "an evidentiary prerequisite to a ... TDIU rating." *Beaty*, 6 Vet.App. at 537–39. Finally, the Board itself noted that the veteran had "worked in mining with occasional work in construction" but had been "laid off", apparently due to PTSD-related problems (R. at 14); this is further evidence that the veteran's past employment is no longer an option for him.

■ *4. Remedy.* "[T]he BVA may not reject [a veteran's] claim without producing evidence, as *distinguished from mere conjecture*, that the veteran can perform work that would produce sufficient income to be other than marginal". *Beaty*, 6 Vet. App. at 537 (emphasis added); *see also James*, *supra* (Board "was not convinced that there were not some jobs he could do"

but no evidence supported that conclusion). In this case, the Board has not produced evidence but rather has relied upon mere conjecture to support its conclusion that the veteran is not "unable to secure and follow substantially gainful employment". 38 C.F.R. § 4.16(b); *Pond* and *Beaty*, both *supra*. Generally, when the Board has provided a decision that does not contain an adequate statement of reasons or bases, the Court will vacate the BVA decision and remand the matter. *See* 38 U.S.C. § 7104(d)(1); *Allday*, *Caluza*, and *Gilbert*, all *supra*. However, the appellant argues that the Court should reverse the Board's denial of a § 4.16(b) TDIU rating and order the Board to award a TDIU rating. Thus, we now turn to the question of remedy.

■ Section 4.16(b) requires that in order to carry out VA's "policy" to provide total-disability ratings to all those "veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities ....", rating boards should submit to the [C & P] Director ... all cases of veterans who are unemployable by reason of service-connected disabilities". The regulation does not specify a quantum of evidence that is necessary to trigger application of the stated "policy" and the duty to "submit" the case to the C & P Director. The evidence of this veteran's unemployability is discussed above, and, based on this evidence, we conclude that there is, at least, a plausible basis in the record for a conclusion that the veteran is unable to secure and follow a substantially gainful occupation. Moreover, if the Court were simply to remand the veteran's TDIU claim pursuant to 38 U.S.C. § 7104(d)(1) and order the BVA to provide an adequate statement of reasons or bases to rebut the findings of the January 1999 VA social and industrial survey that the BVA decision on appeal had failed to rebut adequately, the Board would *also* have to overcome many other items of evidence that *suggest* unemployability. *See, e.g.*, R. at 700 (January 1999 VA psy-

chologist's opinion that veteran has "severe impairment in occupational functioning" and a GAF score of 50); R. at 674–76, 709–11 (records from veteran's employer regarding veteran's significant loss of time from job due to PTSD); R. at 690–91 (September 1998 VA medical record indicating veteran has "[s]hort attention span", "[p]oor concentration", and a GAF score of 50); R. at 664 (September 1998 VA psychiatrist's opinion that "until further notice" veteran is "considered unable to work . . . due to [PTSD]"). Thus, the Court holds that where there is plausible evidence that a claimant is unable to secure and follow a substantially gainful occupation and where the Board has not relied on any affirmative evidence to the contrary, the Court will reverse the Board's determination, as a matter of law, that the veteran's case is ineligible for consideration under § 4.16(b) by referral to the C & P Director.

■ However, we do not accept the appellant's position that the Court may reverse the Board's decision not to award a § 4.16(b) TDIU rating and order the BVA to assign such rating on remand. Such a reversal would, as the appellant conceded at oral argument, require us either to overrule or distinguish as inapplicable to § 4.16(b) the Court's prior precedent in *Floyd v. Brown*, 9 Vet.App. 88, 94–97 (1996), which held that the BVA is not authorized to assign an extraschedular rating in the first instance under 38 C.F.R. § 3.321(b) (1995). *But see Floyd*, 9 Vet. App. at 99–101 (Steinberg, J., dissenting) (interpreting § 3.321(b) to authorize BVA to assign extraschedular rating in first instance). The regulation at issue in *Floyd*, § 3.321(b) (which is unchanged in the current (2000) version of title 38, U.S.Code of Federal Regulations) merely "authorized" either the C & P Director or the Under Secretary for Benefits "to approve . . . an extra-scheduler evaluation commensurate with the average earning capacity impairment due to . . . the service-connected disability", whereas § 4.16(b) provides that "rating boards should submit to the [C & P Director] for extra-scheduler consideration all cases of veterans who are unemployable by reason of service-connected disabilities". The regulatory provision interpreted in *Floyd* is less directory than the one contained in § 4.16(b).

In view of the precedent and reasoning in *Floyd*, then, we hold today that we cannot order the Board to award TDIU under § 4.16(b), which, unlike § 3.321(b), provides that the claim should be submitted to the C & P Director, because the Board has no power to do so in the first instance. *See Bethea v. Derwinski*, 2 Vet. App. 252, 254 (1992) (panel decisions constitute "binding precedent" unless overturned by en banc opinion of this Court or decision of Federal Circuit or Supreme Court). However, we will reverse the Board decision to the extent that it concluded that the veteran was ineligible for § 4.16(b)-TDIU consideration, and direct the Board to submit the matter to the C & P Director for extraschedular consideration under § 4.16(b).

### B. Increased Rating

■ 1. *Applicable law.* "The assignment of a rating is a factual determination." *Bruce v. West*, 11 Vet.App. 405, 410 (1998) (citing *Johnson (Brenda) v. Brown*, 9 Vet.App. 7, 9 (1996)). Under *Francisco v. Brown*, the most recent, or "current", medical findings are to be given precedence over past examinations in adjudicating claims for a rating increase after an initial rating has been assigned in a final VA decision. *Francisco*, 7 Vet.App. 55, 58 (1994) ("[w]here entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance"). The Court reviews Board determinations pertaining to the assignment of a disability rating under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Bruce, supra* (quoting *Gilbert, supra*); *Butts v. Brown*, 5 Vet.App. 532, 538 (1993) (en banc) ("VA and the BVA possess spe-

cialized expertise in identifying and assessing the medical nature of a claimed condition, and their application of a particular DC to a particular condition is due ... deference"); *see also U.S. Gypsum Co., Hensley, Solomon,* and *Gilbert,* all *supra.*

The appellant argues that the Board's evaluation of his PTSD condition as only 50% disabling was clearly erroneous and that he meets the current criteria for a 70% rating under 38 C.F.R. § 4.130, DC 9411, and that the Court should direct the award of a 70% rating. The pertinent current criteria set forth therein are as follows:

> Occupational and social impairment, *with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood,* due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships ............ 70[%]
>
> Occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships ................. 50[%]

38 C.F.R. § 4.130, DC 9411 (emphasis added).

■ *2. General error in Board's adjudication.* At the outset, we note that the parties do not dispute that this is a rating-increase claim. Although a copy of the initial claim for an increased rating does not appear to be in the ROA, the ROA does contain a final initial-rating decision by the RO in July 1991. R. at 304. The ROA also shows that the instant claim has been consistently adjudicated as a claim for an increased rating from the time of that July 1991 RO decision until the BVA decision on appeal. *See, e.g.,* R. at 391–94, 400, 412 (December 1993 RO decision and veteran's appeal therefrom). Although the cover of the BVA decision denominated the claim as an increased-rating claim (R. at 1), it is unclear that the Board adjudicated it as one. For example, it appears that the Board may not have afforded the appropriate weight to the *most recent* medical evidence (i.e., the January 1999 VA social and industrial survey and psychologist's report) (*cf.* R. at 23–24 (BVA's discussion of June 1997 medical evidence); R. at 24 (BVA discussion of veteran's 1998 GAF scores)), or applied the proper legal standard throughout its adjudication of the veteran's scheduler-rating-increase claim (*see* R. at 29–30 (BVA application of *Fenderson v. West,* 12 Vet. App. 119, 126 (1999), which BVA recognized applies to "the appeal of an *initial* assignment of a rating" (emphasis added))). That lack of clarity alone would suggest a remand for the issuance of a readjudicated decision supported by an adequate statement of reasons or bases. *See* 38 U.S.C. § 7104(d)(1); *Allday* and *Caluza,* both *supra; Gilbert,* 1 Vet.App. at 56–57. However, there are several other deficiencies in the Board's opinion that require a remand of this claim.

*3. Board's failure to consider all evidence in terms of applicable DC "areas".* The Board found that "[t]he veteran does

not have deficiencies in most [of the] areas" listed in current DC 9411. R. at 26. The appellant argues to the contrary that the evidence of record, including the facts found by the BVA, supports the conclusion that he suffers deficiencies in most of the six DC 9411 areas listed. We hold that the Board failed to consider much relevant evidence on this point and that the Board's statement of reasons or bases thus provides inadequate support for the above-quoted finding; thus, we will remand this matter for readjudication. *See* 38 U.S.C. § 7104(a) ("[d]ecisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record"), (d)(1) (regarding requirement that BVA decision contain adequate statement of reasons or bases); *Allday, Caluza,* and *Gilbert,* all *supra.*

*a. Board's failure to consider evidence regarding area of work:* The first DC 9411 70% area is "work". Although the Board found that the veteran "remained employed" (R. at 28) (notwithstanding that the evidence shows that he has not reported to work since August 1998) and "has shown an ability to obtain other employment" (*ibid.*) (notwithstanding that the BVA did not point to affirmative evidence showing that the veteran could obtain other employment), the Court has determined in parts II.A.2. and 3., above, that the Board did not provide any support for these findings. That deficiency in the BVA's § 4.16(b)-TDIU adjudication carries forward into the context of the veteran's claim for an increased scheduler rating and the application of the DC 9411 70% area criterion of "work".

Moreover, to the extent that less-recent evidence is relevant to the adjudication of an increased-rating claim, *but cf. Francisco, supra,* the Board dismissed the June 1997 VA examination report, which contained an "opinion that the veteran's PTSD is totally disabling", on the ground that other VA examinations undertaken both before (on February and April 1997) and after (in January 1999) did not corroborate the findings contained in that June 1997 examination report (R. at 23–24) and that the June 1997 examination report did "not *appear* to have taken either of those [other 1997] treatment records into account." R. at 24 (emphasis added). However, the Board subsequently noted that the April 1997 examination report "was incorporated into [the veteran's] claims folder *after* the June 1997 VA psychiatric examination was conducted". R. at 14 (emphasis added). At a minimum, therefore, the Board had a duty to "return the [June 1997 examination] report as inadequate for evaluation purposes". 38 C.F.R. §§ 4.2 ("[i]f a[ medical examination] ... report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes"), 19.9 ("[i]f further evidence or clarification of the evidence or correction of a procedural defect is essential for a proper appellate decision, ... the Board shall remand the case to the [RO] ..., specifying the action to be undertaken") (2000); *Bolton v. Brown,* 8 Vet.App. 185, 191 (1995) (remanding for compliance with 38 C.F.R. §§ 4.2 and 19.9); *Austin v. Brown,* 6 Vet. App. 547, 553 (1994) (recognizing that remands to RO under 38 C.F.R. § 19.9 are "mandatory when the BVA determines that further development of the record is essential").

Not only did the Board improperly discount evidence in support of the veteran's claim regarding the area of "work", but the Board also failed even to consider certain favorable evidence regarding impaired employability. The Board discussed specifically in the context of the evaluation of the veteran's disability under DC 9411 only two of the "difficulties the veteran has reported with his employment", those being his "difficulties in handling his supervisors and the need to take time off". R. at 24. As to the first difficulty, the Board stated that even "individuals without a considerable psychiatric disability have difficulties with supervisors" and that "[t]he

limited number of altercations the veteran had with his supervisors ... does not demonstrate a severe industrial disability". R. at 24. Yet, the Board did not address the veteran's uncontroverted September 1995 sworn testimony that he has "had troubles with supervisors on almost every job [he's] had". R. at 418. As to post–1995 difficulties with supervisors, the Board failed to recognize that the veteran had been unable to attend work for much of that period, which unquestionably limited his contact with supervisors and thus reduced the potential for conflict with them. R. at 536–37 (September 1997 claim for TDIU on which veteran claimed to have lost 18 months of work from "1994" to September 1997, due to his PTSD); R. at 642 (August 1998 letter from VA social worker stating veteran needed 30 days of medical leave); R. at 664 (September 1998 VA psychiatrist letter stating veteran unable to work "until further notice ... for medical reasons"); R. at 674 (November 1998 letter from veteran's employer indicating veteran had been "off on disability due to illness" since August 1, 1998, and had lost 216 hours due to illness during prior year); R. at 712–13 (February 1999 and November 1998 letters from veteran's employer indicating that, due to his absences from work, he was being placed on, respectively, three-day suspension and attendance probation). Also, the Board did not address in terms of the DC 9411 criteria the veteran's complaint, transcribed at the January 1999 VA psychological examination, that he suffered from impaired concentration and memory that caused him in his work as a hospital aide to "have to repeat [a] patient's blood pressure checks several times due to forgetting the numbers" and "leave the floor 6–7 times a day to get away from the stress". R. at 704. This difficulty would appear to be relevant to the DC 9411 symptomological criterion of "difficulty in adapting to stressful circumstances (including work or worklike setting)". 38 C.F.R. § 4.130, DC 9411. In all, given the veteran's work-related problems, and the regularity with which he reported having

them, the Board's statement that even "individuals without a considerable psychiatric disability have difficulties with supervisors" appears, at the very least, to have been inappropriate in the context of the evidence of record in this case. R. at 24.

In addition, the Board's statement of reasons or bases is inadequate in two other respects related to "work". First, the BVA's comment that the veteran's "need to take time off ... is consistent with" a 50% evaluation under DC 9411 (R. at 24) is not adequately supported in its decision. As of the date of the BVA decision, the veteran had been "considered unable to work for medical reasons" (R. at 664) and was absent from work frequently prior to that time (R. at 536–37, 674). These prolonged absences would appear to have threatened his current employment situation and to qualify as more than merely "time off". *See, e.g.,* R. at 699 (January 1999 VA medical examination report indicating that veteran "receives no income from his employment as sick leave/annual leave days have been used up"). Second, the Board also attempted to discount the veteran's work problems by suggesting that "a 50[%] evaluation will cause, by definition, difficulties with employment." R. at 24. Although it is true that a 50% rating encompasses "[o]ccupational ... impairment" and "difficulty in establishing and maintaining effective work ... relationships", it is equally clear that the DC 9411 70% rating criteria *also* encompass such difficulties. Thus, the BVA's statement is not a rationale for a 50% rating any more than it is one for a 70% rating, and cannot serve as a basis for concluding that the above described work-related problems that the veteran has encountered do not indicate that a 70% rating is appropriate.

*b. Board's failure to consider evidence in terms of applicable DC areas and criteria other than "work":* As to areas other than work that are listed in DC 9411, the Board did not address adequately the veteran's apparent deficiencies in the areas of

"school" (*see* R. at 706 (January 1999 VA social and industrial survey indicating that veteran will have "difficulty learning new skills in a vocational rehabilitation program")); "family relations" (*id.* (indicating that veteran was divorced in 1992, when his PTSD had become acute; that he "generally limits his interaction with others to his [three] children"; and that he has 10 siblings that "he lives near" but "has very little contact with")); and "mood", particularly the symptom of "impaired impulse control (such as unprovoked irritability with periods of violence)" (R. at 491 (February 1997 PTSD intake assessment, discussed in the January 1999 medical report relied upon by the BVA, indicating that the veteran had "[s]hot somebody for making threats to [the veteran and his] family")). 38 C.F.R. § 4.130, DC 9411; *see also* R. at 701 (January 1999 VA psychologist's statement that veteran suffers from "some of the criteria" for a 70% rating, including "near-continuous depression affecting the ability to function independently, appropriately and effectively, occasional impaired impulse control, and difficulty in adapting to stressful circumstances (including work), and the inability to establish and maintain effective relationships").

Finally, the Board appeared to rely heavily on a finding it apparently made that the veteran's GAF scores have "[o]n average" been 50 or higher (R. at 24), that he was assessed in October 1998 as having had a GAF score of 60 for the prior year (R. at 24, 690), and that his GAF scores were in general between 50 and 60. However, the Board failed to address a September 9, 1998, VA medical record that assigned the veteran a GAF score of "50 now and 60 for past year" (R. at 691) even though that assignment of a 50 GAF score on September 9, 1998, would seem to conflict with the October 9, 1998, assessment of the veteran as having had a GAF score of 60 for the prior twelve months. The Board has not dealt with that apparent conflict. *See* 38 U.S.C. § 7104(a), (d)(1); *Caluza,* and *Gilbert,* both *supra.*

In support of its finding that "[a GAF] score between 50 and 60, in general, more nearly represents a considerable impairment than it does severe impairment" in terms of the pre–1997 DC 9411 50% and 70% rating criteria in 38 C.F.R. § 4.132 (1996), *see Karnas v. Derwinski,* 1 Vet. App. 308, 313 (1991) ("where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to the appellant should apply unless Congress provided otherwise or permitted the [Secretary] to do otherwise and the Secretary did so"), the Board cited this Court's opinion in *Carpenter (Eugene) v. Brown,* 8 Vet.App. 240, 242 (1995). However, in that case where there was *no evidence of a GAF score below 55,* the Court held that where a veteran has "had a GAF of *55 to 60* " that score "corresponds to '*moderate* difficulty in social, occupational, or school functioning' ", *ibid.* (emphasis added) (quoting DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed.1994) [hereinafter DSM–IV] ), and that the veteran was thus not entitled to a 70% rating under DC 9411. In contrast, in the instant case, the veteran's GAF score has been recorded as being as low as 45 (R. at 528 (June 1997 VA medical record)) and has been evaluated lower than 55 on several other occasions including twice in the most recent (January 1999) evidence contained in the ROA (R. at 700 (January 1999 VA medical record reporting GAF score of 50); R. at 706 (January 1999 VA social and industrial survey reporting current GAF of 50, "and 53 in the past year"); R. at 691 (September 1998 VA medical record reporting GAF score of 50)). *Cf. Richard (Mary) v. Brown,* 9 Vet.App. 266 (1996) (veteran with PTSD rated at 70% received GAF score of 50). In *Richard (Mary),* the Court recognized that a GAF score of 50 indicated " '*serious*' " impairment. *Id.* at 267–68 (emphasis added) (quoting DSM–IV at 32). On remand, the Board must explain why in this case, where the most recent evidence

showed GAF scores of 50 twice in January 1999 and 53 in the prior year (R. at 700, 706) and where other recent evidence showed a GAF score of 50 (R. at 691), the Board chose to characterize the veteran's GAF score range as "55–60" and thereby apply *Carpenter (Eugene)*, rather than to characterize the veteran's GAF score range as, for example, "50–53", and consider the veteran to have either "serious" symptoms or "serious" impairment as described in the DSM–IV criteria discussed in *Richard (Mary)*.

■ *4. Remedy.* The above discussion shows that the BVA decision was severely flawed, a result that, at the very least, warrants a remand as to the scheduler-rating-increase claim. However, the appellant seeks reversal of the Board's denial of a 70% rating. Thus, again, we turn to the question of remedy. The assignment of a particular rating is a finding of fact. *See Smallwood v. Brown,* 10 Vet.App. 93, 97 (1997); *Lovelace v. Derwinski,* 1 Vet. App. 73, 74 (1990). The Court has the power to "hold unlawful and set aside" a finding of material fact only "if the finding is clearly erroneous." 38 U.S.C. § 7261(a)(4). Moreover, the Court does not generally assign particular ratings in the first instance. In the rare and singular case where it did do so as to a rating other than a TDIU rating, all of the evidence compelled the conclusion that the veteran deserved such a rating. *Powell v. West,* 13 Vet.App. 31 (1999) (reversing when facts as found by the BVA provided "no other permissible view of the evidence"). In this case, in view of the January 1999 VA examiner's opinion that the veteran's symptomatology most closely approximates the criteria for a 50% rating (R. at 700 (selecting number (4) in the question asked by the BVA in its June 1998 remand)), and of the inadequacy of the statement of reasons or bases in the BVA decision, *see* 38 U.S.C. § 7104(a), (d)(1); *Allday, Caluza,* and *Gilbert,* all *supra,* we cannot conclude at this point that the evidence in support of a 70% rating is

uncontroverted. *See Talley v. Brown,* 6 Vet.App. 72, 74–75 (1993) (holding that where "Board's contrary and unsupported medical findings cannot stand" for failure to adequately account for favorable medical evidence, appropriate remedy is to vacate BVA decision and remand the claim). Moreover, the January 1999 VA examination reports are the most recent examination and thus should be afforded the greatest weight, a factor that further weighs against reversal in this case. *See Francisco, supra.*

The appellant argues that this Court's application of the "clearly erroneous" standard of review, as set forth in *Gilbert,* 1 Vet.App. at 53, is incorrect and overly narrow. He suggests that under *Gilbert* the Court can affirm a BVA decision based on the existence in the ROA of a *single* piece of evidence that supports the Board's decision, even in the face of a record that, *in its totality,* creates in the Court "a definite and firm conviction that a mistake has been committed", *U.S. Gypsum Co., supra. See* Appellant's Brief at 20 (arguing that *Gilbert* allows "this Court to affirm facts found by the Board on the basis that a review of the record discloses some individual piece of evidence which, in isolation, supports the Board's decision"). The appellant has not cited any precedent demonstrating to the Court's satisfaction this alleged tension between *U.S. Gypsum Co.* and *Gilbert.* (The appellant's reliance on *Dunn v. West,* 11 Vet.App. 462, 467 (1998), is misplaced; the Court in that case discussed the evidence on the increased-rating claim for hernia residuals, *id.* at 465, and there is no indication that it failed to consider the entire record on that question.) The Court has frequently cited and applied the criteria of both cases, simultaneously; indeed, we did so in *Gilbert* itself. *Gilbert,* 1 Vet.App. at 52 (" '[a] finding is clearly erroneous when although there is evidence to support it, the reviewing court *on the entire evidence* is left with the definite and firm conviction that a mistake has been committed' " (internal quotation marks omitted and emphasis added) (quot-

ing *U.S. Gypsum Co.*)); *see also, e.g., Perry v. West,* 12 Vet.App. 365 (1999) (quoting *Gilbert* (citing *U.S. Gypsum Co.*)); *Pond,* 12 Vet.App. at 345 (quoting *U.S. Gypsum Co.* and *Gilbert*); *Mattern v. West,* 12 Vet.App. 222, 229 (1999) (same, and reversing when all of the evidence of record supported finding that appellant's claim was well grounded); *Chisem v. Brown,* 4 Vet.App. 169, 175 (1993) (reversing based on a " 'firm conviction that a mistake ha[d] been committed' " (quoting *U.S. Gypsum Co.* after citing *Gilbert* earlier)).

Upon consideration of all of the evidence of record in this case and taking into account the deficiencies in the Board decision that impair our ability, as a reviewing Court, to decide this question at this point, *see* 38 U.S.C. § 7104(a), (d)(1); *Allday* and *Caluza,* both *supra; Gilbert,* 1 Vet.App. at 56–57, we are not left with a "firm and definite conviction" that the veteran is entitled to a 70% rating. *U.S. Gypsum Co., supra.* However, for the reasons set forth above, we are convinced that the Board failed to consider adequately the criteria in DC 9411 for a 70% rating and will remand for a full readjudication—under both the old and new DC 9411 criteria, *see Karnas, supra,* and the issuance of a new decision supported by an adequate statement of reasons or bases, and note again that there is much evidence that the Board must address explicitly on remand that it failed to address in the decision on appeal. *See* 38 U.S.C. § 7104(a), (d)(1); *Allday, Caluza,* and *Gilbert,* all *supra; Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991) ("A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case.").

## III. Conclusion

Because the appellant explicitly abandoned his Meniere's-disease claim, the Court dismisses the appeal as to the July 12, 1999, BVA decision's denial of that claim.

Upon consideration of the foregoing analysis, the ROA, and the submissions of the parties, the Court reverses the July 12, 1999, BVA decision as to its determination that the veteran's TDIU claim not be submitted to the C & P Director, and vacates the decision on all remaining matters and remands those matters for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 5107, 7104(a), (d)(1); 38 C.F.R. § 4.132, DC 9411 (1996); 38 C.F.R. §§ 4.7, 4.130, DC 9411 (2000); *Francisco* and *Fletcher,* both *supra*—all consistent with this opinion.

The Court is mindful that the appellant's increased-rating claim has been the subject of VA litigation for almost a decade, and expects the Secretary, on remand, to heed closely section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday,* 7 Vet.App. at 533–34; *cf. Dambach v. Gober,* 223 F.3d 1376, 1381 (Fed.Cir.2000) (in case where appellant had "moved for an order to expedite proceedings", appropriate for this Court "to set a deadline by which this veteran's case will be concluded"). Regarding the Secretary's motion for partial remand, in which he asserts that "[a] remand is required due to the recent enactment of the Veterans Claims Assistance Act of 2000, Pub.L. No. 106–475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA)" as to the appellant's increased-rating and TDIU claims, Secretary's Motion at 1–2, the Court notes that the appellant argues to this Court that the VCAA affords him no benefit, Appellant's Opposition at 1–5. If he wishes to maintain this position before the Board, it appears that he would be free to waive the application of any additional rights afforded to him by the VCAA in

order to attempt to bring these matters to a more expeditious conclusion. *Cf.* 38 C.F.R. § 20.1304(c) (2000) (expressly permitting claimant to waive remand from BVA to RO for issuance of Supplemental Statement of the Case when additional pertinent evidence is submitted by claimant); *Sutton v. Brown*, 9 Vet.App. 553, 567–69 (discussing application of § 20.1304(c), including waiver provision); *Allday*, 7 Vet.App. at 533 (appellant can "expressly waive ... due process rights [before the BVA] ... if he wishes to do so"). The Secretary's motion is thus denied as moot.

On remand, the appellant will be free to submit additional evidence and argument on the remanded claims in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372–73 (1999) (per curiam order). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

APPEAL DISMISSED IN PART; REVERSED AND VACATED IN PART AND REMANDED IN PART.

KRAMER, Chief Judge, concurring in the result.

For the following reasons, I concur in the remand ordered by the majority opinion.

As to the appellant's claim for a total disability rating based on individual unemployability (TDIU) under 38 C.F.R. § 4.16(b) (2000), the Board of Veterans' Appeals (BVA or Board) concluded that the evidence did not support an assignment of a TDIU rating because "[w]hile the veteran has lost some time from work due to his [post-traumatic stress disorder (PTSD)], he has not lost his job and remains employed." Record (R.) at 28–29. The crucial issue before the Court is whether the Board should have referred the TDIU claim to the Director, Compensation and Pension Service, as directed by § 4.16(b).

The § 4.16(b) standard for referral is whether the appellant is "unemployable," that is, "unable to secure and follow a substantially gainful occupation." 38 C.F.R. § 4.16(b). The relevant evidence is as follows: The appellant, although technically employed, was on medical disability leave for which he was not receiving any payment at the time of the July 1999 BVA decision. In a September 9, 1998, letter, a VA psychiatrist stated that, effective on that date and "until further notice," the appellant was unable to work due to his PTSD. R. at 664. The appellant's employer notified a VA regional office (RO) in November 1998 that the appellant was "on disability due to illness" and that he had last worked on August 1, 1998. R. at 674–75. In January 1999, a VA clinical psychologist noted that the appellant had been on medical leave since August 1998 and that he then received no income from his employment because he had exhausted his annual and sick leave. R. at 695–701. In a January 1999 VA social and industry survey report, the social worker noted that the appellant was currently on leave from his work and had been for the past six months due to his PTSD. R. at 703–06.

Based on this evidence, I find the following errors in the BVA decision. First, although the Board found that the appellant "remains employed," it neither made a determination as to whether that employment was "a substantially gainful occupation" nor provided any explanation as to why, in the Board's view, technical employment precluded a finding of unemployabili-

ty pursuant to § 4.16(b). Second, there is some evidence of record that appears to reduce the clarity of the appellant's employment status at the time of the Board decision (R. at 712–13), and the Board should have therefore clarified the appellant's employment situation. In light of those BVA errors, I would have remanded for further development of the evidence as to the appellant's employment status and readjudication of the matter to include an adequate statement of reasons or bases as to whether referral was required under § 4.16(b).

As to the appellant's claim for a rating above 50% for PTSD, the Board held that a rating increase was not warranted because "the 50 percent criteria are more nearly approximated than the 70 percent criteria" (R. at 26). The evidence that best supports that decision is the January 1999 report by a VA clinical psychologist (R. at 695–701). That report, however, contains several significant omissions. First, the VA psychologist did not assess the appellant's symptoms according to the 1996 Rating Schedule, *see Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991), apparently for lack of a request to do so by the RO. Second, the VA psychologist did not reconcile his opinion with other medical evidence, which tended to support a higher rating (R. at 526–28, 655–56, 664). Third, the VA psychologist did not support with a specific explanation of symptoms his opinion that the appellant's condition more closely matched the criteria of # 4 than # 5, which had been enumerated in a June 11, 1998, BVA remand of the PTSD claim (R. at 630–31; *see also Ante* ——, at slip op. at 3–4). Therefore, because the Board depended heavily on an incomplete report, a remand to the Board is required.