http://www.va.gov/vetapp16/Files5/1639940.txt

Citation Nr: 1639940 
Decision Date: 09/30/16 Archive Date: 10/13/16

DOCKET NO. 06-33 587 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas

THE ISSUE

Entitlement to an effective date earlier than September 3, 2009 for the award of a total disability rating based on individual unemployability (TDIU) on an extraschedular basis.

REPRESENTATION

Veteran represented by: Texas Veterans Commission

WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse

ATTORNEY FOR THE BOARD

T. Minot, Associate Counsel

INTRODUCTION

The Veteran served on active duty in the United States Army from March 1963 to March 1970.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2006 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas.

In September 2009, the Veteran testified before a Veterans Law Judge (VLJ) at a Travel Board hearing. A transcript of the hearing is of record. In December 2012, the Veteran was informed that the individual who conducted his hearing was no longer employed by the Board. The Veteran was offered an opportunity to testify at another hearing before a different VLJ. See 38 C.F.R. § 20.707 (2015). That same month, the Veteran responded that he did not desire another hearing and requested that the Board consider his claim based on the evidence of record. Therefore, the Board finds that there is no hearing request pending at this time. See 38 C.F.R. § 20.702(e).

In a March 2016 decision, the Board denied entitlement to a disability rating in excess of 30 percent for the Veteran's diabetic retinopathy, and granted entitlement to TDIU effective September 3, 2009. The Board then referred the issue of entitlement to a TDIU prior to September 3, 2009 to the VA Director of Compensation Service (Director) for consideration pursuant to 38 C.F.R. § 4.16(b). The Director issued a memorandum denying the claim in June 2016. The case is now returned to the Board for appellate review.

As an additional note of clarification, the Board notes that the issue of entitlement to service connection for bilateral cataracts was referred to the RO by the Appeals Management Center (AMC) in October 2012, and was again referred to the RO by the Board in March 2016. In June 2016, the RO indicated that the Veterans' cataract of the left eye would be included in the rating for his service-connected diabetic retinopathy. The Veteran has not expressed disagreement with that decision.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDINGS OF FACT

1. The Veteran filed a claim of entitlement to an increased rating for diabetes and entitlement to service connection for eye and skin disorders in September 2005. The issue of entitlement to TDIU was not raised by the record until November 2012, when the Veteran submitted a VA 21-8940.

2. In March 2016, the Board awarded the Veteran TDIU and assigned an effective date of September 3, 2009.

3. In June 2016, the Director of Compensation Service denied entitlement to an effective date earlier than September 3, 2009 for the award of TDIU on an extraschedular basis.

4. Prior to September 3, 2009, the combined effects of the Veteran's service-connected disabilities did not render him unable to secure and follow a substantially gainful occupation.

CONCLUSION OF LAW

The criteria for an effective date earlier than September 3, 2009 for the award of TDIU on an extraschedular basis have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.400, 4.16 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duties to notify and assist claimants in substantiating their claims for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. § 3.159 (2015).

The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met. Initially, the Board notes that the appeal presents a "downstream" issue in that it arose following the grant of a TDIU; regardless, adequate notice was provided to the Veteran in writing in January 2013 regarding the type of evidence needed to substantiate the claim on appeal. VA has also satisfied its duty to assist with regard to the issue decided herein. The claims folder contains available VA outpatient records and examination reports, as well as private medical records and lay statements from the Veteran. Moreover, additional VA examinations are not necessary, as current findings would not serve to establish entitlement to an earlier effective date for a TDIU, nor would current findings establish entitlement to an increased level of compensation. On review, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication. See 38 C.F.R. § 3.159.

As noted above, the Veteran presented testimony at a Board hearing in September 2009. Although issues relating to TDIU were not discussed at the hearing, the Veteran's functional impairment and manifestations were addressed, and he was provided an opportunity to submit additional evidence. He was provided the opportunity to testify at another hearing in December 2012 but declined. In any event, the actions of the VLJ supplement the VCAA and comply with any duties owed during a hearing. 38 C.F.R. § 3.103.

Law and Analysis

The Veteran contends that he is entitled to an effective date earlier than September 3, 2009 for his award of TDIU. In multiple statements, he has contended that he became unemployable in June 2009 as a result of his service-connected disabilities, notwithstanding his schedular ratings.

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. Marginal employment is not considered substantially gainful employment. 38 C.F.R. §§ 3.340, 4.16(a).

Substantially gainful employment means, essentially, that the work provides income above the poverty level established by the United States Department of Commerce, without benefit of protected family employment or a sheltered workshop. 38 C.F.R. § 4.16(a). Factors to be considered in determining entitlement to TDIU include but are not limited to employment history, educational achievement, and vocational attainment. Age is not a factor. 38 C.F.R. § 4.16(b).

Basic eligibility is established where there is one disability rated 60 percent or more, or multiple disabilities rated at least a combined 70 percent, with one disability rated at least 40 percent. 38 C.F.R. § 4.16(a). Where these percentage requirements are not met, entitlement to benefits on an extraschedular basis may be considered, as it is the established policy of VA that all Veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16(b). The Board does not have the authority to assign an extraschedular TDIU in the first instance. Bowling v. Principi, 15 Vet. App. 1 (2001).

The statutory and regulatory guidelines for determining the effective date of an award of disability compensation are set forth in 38 U.S.C.A. § 5110 and 38 C.F.R. § 3.400. Except as otherwise provided, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefore. 38 U.S.C.A. § 5110(a).

In cases involving a claim for higher compensation, the effective date will be the earliest date as of which it is factually ascertainable that an increase in disability occurred, if the claim is received within one year from that date; otherwise, the effective date is the date the claim is received. See 38 U.S.C.A. § 5110(b)(3); 38 C.F.R. § 3.400(o)(2). A TDIU claim is a claim for increased compensation, and the effective date rules for increased compensation apply to a TDIU claim. Hurd v. West, 13 Vet. App. 449 (2000).

"Claim" is defined broadly to include a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1(p); Brannon v. West, 12 Vet. App. 32, 34-35 (1998). With respect to informal claims, the Board is aware that this case predates the changes to 38 C.F.R. § 3.155, and therefore the older version of the regulation applies. Under the former § 3.155, any communication or action indicating an intent to apply for one or more benefits under laws administered by the VA from a claimant may be considered an informal claim. Such an informal claim must identify the benefits sought.

Where a Veteran: (1) submits evidence of a medical disability; (2) makes a claim for the highest rating possible; and (3) submits evidence of unemployability, the requirement in 38 C.F.R. § 3.155(a) that an informal claim "identify the benefit sought" has been satisfied and VA must consider whether the Veteran is entitled to a total rating for compensation purposes based on individual unemployability. Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). To determine when a claim was received, the Board must review all communications in the claims file that may be construed as an application or claim. See Quarles v. Derwinski, 3 Vet. App. 129, 134 (1992).

In this case, the Veteran first met the schedular requirements for TDIU on September 3, 2009, which is the effective date of his award for TDIU. Prior to that date, the Veteran was service-connected for diabetic retinopathy with cataracts in the left eye (30 percent disabling) and diabetes mellitus with onychomycosis (20 percent disabling), with an additional noncompensable evaluation for bilateral hearing loss. His combined rating prior to September 3, 2009 was 40 percent.

A review of the record reveals the following. The Veteran filed an original claim for service connection for diabetes mellitus in January 2001. Service connection for this disability was granted in April 2002, and a 20 percent disability rating was assigned. The Veteran did not appeal that decision, and therefore it became final. See 38 C.F.R. § 20.1103.

The Veteran next filed a claim of entitlement to an increased rating for diabetes and entitlement to service connection for eye and skin disorders secondary to his diabetes in September 2005. He did not contend at that time that was unable to work due to his service connected disability. On the contrary, a VA examination in November 2005 noted that, while his diabetes affected his working conditions in that he had to constantly take breaks to check his blood sugar and his vision had gradually diminished impacting his work and his ability to drive, the Veteran was employed in real estate. An eye examination reflected that he had lost approximately six weeks of work over the past 12 months due to his diabetic eye conditions.

February 2006 and April 2006 letters from a private physician referenced the Veteran's decreasing visual acuity, especially in the right eye. Diagnoses of diabetic macular edema, bilaterally, and evolving bilateral cataracts were noted.

In June 2006, the RO granted service connection for diabetic retinopathy, assigning a 20 percent rating effective September 2, 2005 (increased to 30 percent disabling in October 2012). The RO continued the previously assigned 20 percent rating for diabetes. The Veteran filed a notice of disagreement in June 2006 in which he referred to a "request for 100% compensation," but did not provide any information with regard to his employment status. He reported that his eyesight was getting worse and his diabetes required daily insulin.

Following issuance of a Statement of the Case in September 2006, the Veteran perfected an appeal to the Board in October 2006 with regard to the assigned ratings for his diabetes and diabetic retinopathy. In his VA Form 9, he stated that he was unable to stand for more than 30 minutes at a time due to his diabetic onychomycosis.

A March 2007 letter from the Veteran's ophthalmologist reflects that, at this point, the Veteran was legally blind in his right eye due to diabetic retinopathy.

On VA examination in April 2007, the Veteran reported having blurred vision, especially in the right eye. The report noted a history of laser therapy and steroid injections in both eyes. Visual acuity with best correction was 20/200 in the right eye and 20/30 in the left eye. Diagnoses were mild to moderate diabetic retinopathy, more significant in the right eye, and mild age-related cataracts. When asked about adverse effects on the Veteran's employment, the examiner noted (apparently incorrectly) that the Veteran was retired.

VA outpatient records reflect that in August 2008 and January 2009, the Veteran indicated that he was still working part-time as a real estate broker.

An August 2009 letter from the Veteran's ophthalmologist reflects the Veteran's report that his right eye seemed "not functional" but that his left eye was "pretty good." Upon examination, visual acuity with correction was 20/200 in the right eye and 20/40 in the left eye.

In September 2009, the Veteran filed a claim for service connection for peripheral neuropathy and also requested a compensable rating for his service-connected hearing loss. During his September 2009 Board hearing, the Veteran and his wife testified that his diabetes symptoms and associated complications, to include retinopathy and skin problems, had gotten worse. However, he indicated that he was still working as in the real estate management of commercial office buildings, although he reported difficulties with driving due to his vision impairment.

In January 2010, the Board denied a rating in excess of 20 percent for the Veteran's diabetes and remanded the issue of entitlement to a rating in excess of 20 percent for diabetic retinopathy. In addition, the Board considered whether the issue of unemployability had been raised by the record, but found that there was "no evidence" to suggest that the Veteran's service-connected disabilities rendered him unemployable. See Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009).

On VA examination in March 2010, the Veteran reported blurred vision, especially in the right eye. Upon examination, his corrected visual acuity was 20/200 in the right eye and 20/40 in the left eye. The diagnosis was moderately severe nonproliferative diabetic retinopathy and multiple laser scars in the right eye. In addition, there was a developing cataract in the left eye. The examiner noted that the Veteran's visual impairment had had no effect on his employment over the past 12 months.

In September 2010, the Veteran underwent a VA examination for his diabetes. He reported that he visited a diabetic care provider every three months, and the examiner noted that his diabetes resulted in moderate effects on his occupation and activities. The Veteran reported that he worked full time as a property manager until six months ago and was now a part-time real estate broker. He was able to walk for 30 minutes at a time and could lift 20-30 pounds.

In November 2012, the Veteran filed an application for TDIU. In his VA Form 21-8940, he indicated that he ceased full-time employment on June 30, 2009 due to his service-connected diabetes and associated complications. However, subsequent to June 2009, he noted that his highest monthly earnings were $2,000. By way of explanation, he stated that he was unable to perform tours and physical activity, and stated that any extended period of sitting at a desk or computer caused him to go to sleep. He also reported that he could not engage in heavy lifting. In terms of education and work experience, he noted that he had four years of college education and had been trained in real estate sales.

In May 2013, the Veteran submitted earnings statements from 2008 and 2009 which reflected $22,912 in salaries and wages for 2009, with additional business income of $2,656 and rent and royalty income of $9,322. No salary or wage earnings were reported for 2008.

In August 2013, the Veteran stated that he stopped working for his prior employer on June 19, 2009, because his supervisor suggested it might be time to retire as the Veteran was making too many mistakes. He reported having problems with contracts due to poor eyesight, and was having difficulty hearing clients in conversation. He also indicated that he had problems standing for extended periods of time. He reported that after leaving his former employer he tried to work as a real estate broker but had only one deal due to difficulties with his disabilities.

In March 2016, the Board granted entitlement to TDIU effective September 3, 2009, and referred the matter of entitlement to TDIU prior to that date to the Director of Compensation Service for consideration of an earlier effective date on an extraschedular basis. In June 2016, the Director determined that TDIU on an extraschedular basis was not warranted. In so finding, the decision noted that outpatient records from 2007 through 2009 revealed reports that the Veteran continued to work on at least a part-time basis. The decision also noted that the claims file contained no medical opinions supporting the Veteran's contention that he was unable to work prior to September 3, 2009. The record was also negative for any hospitalizations, emergency room visits, or frequent treatment for his service-connected conditions.

After carefully reviewing the record, the Board finds that the evidence is against the Veteran's claim for an earlier effective date for his award of TDIU. In short, because there was no formal or informal claim for TDIU filed prior to September 3, 2009, and because it was not factually ascertainable that the Veteran was totally disabled due to service-connected disabilities prior to that date, the claim must be denied.

The Board first finds that there were no claims for TDIU that were pending prior to September 3, 2009 that would justify an earlier effective date under the provisions of 38 U.S.C.A. § 5110 and 38 C.F.R. § 3.400. The Veteran has not identified any pending claims for TDIU, whether formal or informal, prior to November 2012. As discussed above, the Veteran submitted a VA Form 21-8940 for the first time in November 2012. At no other point prior to that date did the Veteran allege that his service-connected disabilities rendered him unemployable.

As to the claims filed in September 2005, the Veteran merely indicated that he was seeking service connection for diabetic eye and skin disorders, as well as increased compensation for his diabetes. No information regarding his employment status or employability was provided. Significantly, the Veteran and his wife testified at his September 2009 Board hearing regarding his diabetes-related symptoms but provided no testimony that he was unemployed due to service-connected disabilities. See 38 C.F.R. § 3.155; Brannon, 12 Vet. App. at 34-35. There is no indication in the record of hospitalizations due to service-connected disease or injury. As such, the provisions of 38 C.F.R. § 3.157(b) do not apply.

The Board accepts as credible the Veteran's allegation that his former employee asked him to retire in June 2009, and that this request was related to disability caused by his service-connected diabetes with onychomycosis and retinopathy. Nevertheless, the Board finds that the preponderance of the evidence is against the Veteran's contention that he was unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities prior to September 3, 2009, given his education (college degree) and work history (real estate broker). As noted above, the Veteran's retinopathy caused significant impairment of his vision, including legal blindness in his right eye, prior to September 3, 2009. Likewise, his diabetes with onychomycosis required daily insulin intake and limited his ability to stand or walk for long periods. The Board accepts that these symptoms impacted the Veteran's employment. However, the Veteran has reported that he was able to work for several years prior to his retirement despite vision problems; his tax and income statements confirm that he earned more than $20,000 in salary and wages in 2009; and there is no indication of dramatic worsening of his vision or diabetes prior to September 3, 2009. Moreover, the medical opinions of record, including VA examination reports discussed above, are against a finding of unemployability on account of his retinopathy and/or diabetes prior to September 3, 2009.

In sum, the evidence of record demonstrates that September 3, 2009 is the earliest date that it is factually ascertainable that the Veteran's service-connected disabilities prevented him from obtaining and maintaining substantially gainful employment. Accordingly, for the reasons stated above, an effective date prior to September 3, 2009 for the award of TDIU on an extraschedular basis is not warranted.

ORDER

Entitlement to an effective date prior to September 3, 2009 for the award of TDIU on an extraschedular basis is denied.

____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs