Citation Nr: 1736716 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 08-23 090A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to a rating in excess of 40 percent for a left ankle disability for the period beginning August 1, 2012. 

2. Entitlement to a total disability rating based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

Matthew Miller, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1980 to March 1984.

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

In May 2012, the Veteran appeared at a hearing held at the RO before the undersigned Veterans Law Judge. A transcript of that hearing is of record.
 
In June 2013, the Board granted a 20 percent rating for a left ankle disability for the period of July 31, 2007 through April 3, 2008; granted a 20 percent rating for a left ankle disability for the period of May 1, 2009 through February 10, 2010; and granted entitlement to a 40 percent rating for a left ankle disability for the period of November 1, 2011 through April 19, 2012. The Board also remanded the issues of entitlement to a rating in excess of 20 percent for a left ankle disability for the period beginning August 1, 2012 and entitlement to a TDIU.

In January 2014, the RO implemented the Board's June 2013 decision. It also increased the rating for a left ankle disability to 40 percent, effective August 1, 2012. The RO apparently considered this a full grant of the benefit sought as the issue was not addressed in the July 2014 supplemental statement of the case. 

In October 2014, the Board again remanded the Veteran's appeal for additional development. It has since returned to the Board for further consideration.

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems. Any future consideration of this appellant's case should take into account the existence of these records. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. For the period beginning August 1, 2012, the Veteran's left ankle disability has been assigned the maximum 40 percent rating for a disability of the ankle under the regular schedular criteria and referral for an extraschedular evaluation is not warranted.

2. The preponderance of the evidence of record does not show that the Veteran is unemployable due to his service-connected disabilities. His only service connected disorders concern the left lower extremity due to the ankle impairment. A combined 40 percent rating is in effect.


CONCLUSIONS OF LAW

1. For the period beginning August 1, 2012, the criteria for a rating in excess of 40 percent for the Veteran's service-connected left ankle disability have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.40, 4.45, 4.46, 4.68, 4.71a, Diagnostic Codes (DC) 5271-5056 (2016).

2. The criteria for a TDIU have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.340, 4.1, 4.16 (2016).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified at 38 U.S.C.A. §§ 5100, 5102, 5103A, 5107, 5126 (West 2014) sets forth VA's duties to notify and assist a claimant with the evidentiary development of a claim for compensation or other benefits. See also 38 C.F.R. §§ 3.102, 3.159 and 3.326 (2016). VCAA notice must, upon receipt of a complete or substantially complete application for benefits, inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that the claimant is expected to provide; and (3) that VA will obtain on his behalf. The Veteran has been provided satisfactory and timely VCAA notice in advance of the rating decision on appeal.

VA has also fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate his claim, and, as warranted by law, affording VA examinations. Currently, there is no evidence that additional records have yet to be requested, or that additional examinations are in order. Moreover, there is currently no error or issue which precludes the Board from addressing the merits of the Veteran's appeal.

The Veteran's statements in support of the claim are of record, including testimony provided at the hearing before the undersigned Veterans Law Judge. The Board hearing focused on the elements necessary to substantiate his claim and the Veteran, through his testimony and his representative's statements, demonstrated that he had actual knowledge of the elements necessary to substantiate the claim for benefits. Thus, the material issues on appeal were fully developed in accordance with 38 C.F.R. § 3.103(c) (2016).

Pursuant to the Board's October 2014 remand, the AOJ verified the Veteran's address, obtained outstanding records, and scheduled the Veteran for a VA examination and opinion which was responsive to the questions asked of the examiner. The AOJ then issued a supplemental statement of the case in May 2017. Based on the foregoing actions, the Board finds that there has been substantial compliance with the Board's prior remand. Stegall v. West, 11 Vet. App. 268 (1998).

Finally, in reaching this determination, the Board has reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the Veteran's claim, and what the evidence in the claims file shows, or fails to show, with respect to this claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R. Part 4. The percentage ratings are based on the average impairment of earning capacity as a result of a service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. All reasonable doubt as to the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

While it is necessary to consider the complete medical history of the Veteran's condition in order to evaluate the level of disability and any changes in condition, where an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991); Francisco v. Brown, 7 Vet. App. 55 (1994).

In deciding the Veteran's increased evaluation claim, the Board has considered the determinations in Fenderson v. West, 12 Vet. App. 119 (1999) and Hart v. Mansfield, 21 Vet. App. 505 (2007), and whether the Veteran is entitled to an increased evaluation for separate periods based on the facts found during the appeal period.

Disability of the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal excursion, strength, speed, coordination and endurance. The functional loss may be due to absence of part or all of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as disabled. See DeLuca v. Brown, 8 Vet. App. 202 (1995).

In addition, when assessing the severity of a musculoskeletal disability that, as here, is at least partly rated on the basis of limitation of motion, VA must also consider the extent to which the Veteran may have additional functional impairment above and beyond the limitation of motion objectively demonstrated, such as during times when his symptoms are most prevalent ("flare-ups") due to symptoms such as pain. See also 38 C.F.R. §§ 4.40, 4.45.

Left Ankle Disability

The Veteran seeks an increased rating for his service-connected left ankle disability. Essentially, he contends that his condition is more severe than presently evaluated.

The Veteran's left ankle disability is rated under Diagnostic Codes 5271-5056. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the specific basis for the evaluation assigned; the additional code is shown after a hyphen. 38 C.F.R. § 4.27 (2016). It is currently characterized as "total left ankle replacement for residuals of left ankle fracture with failed ankle fusion." The Board acknowledges that 40 percent is the maximum schedular rating for an ankle replacement more than one year following implantation of the prosthesis and 40 percent is also the maximum schedular rating for any ankle disability. See 38 C.F.R. § 4.71a, Diagnostic Codes 5056, 5270-5274 (2016).

The Board notes that the Veteran had surgery to remove his prosthetic ankle in April 2012. The surgery report indicated that the removal of the ankle prosthesis could result in a shorter left lower extremity, which could theoretically result in an additional rating. Thus, the Board will consider whether any alternative or separate diagnostic code may enable a higher rating. Butts v. Brown, 5 Vet. App. 532 (1993).

Pursuant to the Board's October 2014 remand, the Veteran underwent a new VA examination in May 2017. The examiner diagnosed the Veteran with degenerative arthritis left ankle with arthrodesis (complications). The Veteran reported that he had gone through about five surgeries including ankle replacement that did not go well, which caused doctors to remove the ankle replacement and fuse his ankle. He stated that he was informed it had shortened his leg and may cause him to limp. The examiner noted that range of motion testing could not be performed because of the fused ankle. However, the examiner found no evidence of pain, localized tenderness, or evidence of crepitus. The examiner reported that the Veteran's ankle has less movement than normal due to ankyloses and adhesion. The examiner noted weakened movement of the Veteran's left ankle due to muscle or peripheral nerve injury. The examiner also noted that the Veteran's left ankle causes instability of station, disturbance of locomotion, interferes with sitting and standing, and reduces muscle strength. Notably, the examiner reported that the Veteran's right leg is 81 centimeters and left leg is 76 centimeters, which results in a left leg length discrepancy of 5 centimeters. 

Under Diagnostic Code 5275, which pertains to shortening of bones of the lower extremity, when the shortening is from 1 1/4 to 2 inches (3.2 centimeters to 5.1 centimeters), a 10 percent rating is assigned. When the shortening is from 2 to 2 1/2 inches (5.1 centimeters to 6.4 centimeters), a 20 percent rating is assigned. When the shortening is from 2 1/2 to 3 inches (6.4 centimeters to 7.6 centimeters), a 30 percent rating is assigned. When the shortening is from 3 to 3 1/2 inches (7.6 centimeters to 8.9 centimeters), a 40 percent rating is assigned. Importantly, a Note following Diagnostic Code 5275 provides that this diagnostic code should not be combined with other ratings for fracture or faulty union in the same extremity. 38 C.F.R. § 4.71a. Thus, as the Veteran's left ankle disability is rated, at least in part, as residuals of a left ankle fracture with failed fusion, Diagnostic Code 5275 cannot be applied to the Veteran's left leg length discrepancy of 5 centimeters because it involves a fracture of the same extremity that has already been assigned the highest possible schedular rating.

After review, the Board finds that a disability rating in excess of 40 percent evaluation for the Veteran's service-connected left ankle disability for the period beginning August 1, 2012 is also precluded by the Amputation Rule. According to the Amputation Rule, the combined ratings for disabilities of an extremity shall not exceed the rating for amputation at the elective level. 38 C.F.R. § 4.68. In this case, the Amputation Rule precludes a rating in excess of 40 percent for any pathology involving the ankle. 38 C.F.R. §4.71a, Diagnostic Code 5165 (rating for a below-the-knee amputation of the leg at a lower level, permitting prosthesis). In other words, the 40 percent rating for the Veteran's left ankle disability is the maximum rating allowed for a below-the-knee amputation of the leg at a lower level, permitting prosthesis, at the elective level. Thus, the Board need not consider whether a rating higher than 40 percent is warranted for his left ankle disability under any other diagnostic code. In that regard, the Board notes the Veteran's latest diagnosis of degenerative arthritis of the left ankle; however, even if he were entitled to such a separate rating, he would not receive any more compensation. Further, there is no claim or contention that he would be equally well served by amputation with placement of a prosthesis. Thus, loss of use of the left foot has not been claimed or demonstrated.

Therefore, an increased rating for the Veteran's left ankle disability for the period beginning August 1, 2012 is not warranted. As the preponderance of the evidence is against the claim, the claim must be denied. 38 U.S.C.A. § 5107 (b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Regarding an extraschedular rating, just like a higher schedular rating, an extraschedular rating would also be inapplicable in this case, as it would mandate the assignment of a rating in excess of what would be assigned for someone whose leg below the knee was amputated. 38 C.F.R. § 4.68 explicitly states that the combined rating shall not exceed the amount for amputation of a limb at the level of the disability; it does not state that the combined schedular rating should not exceed the amount for amputation of a limb at the level of the disability. As such, the language is clear that once the amputation rating threshold is reached, no higher rating, whether schedular or extraschedular, may be assigned. Accordingly, extraschedular consideration for the Veteran's service-connected left ankle disability is not warranted.

TDIU 

The Veteran contends that his service-connected disabilities render him unemployable and that he is therefore entitled to a TDIU. Specifically, the Veteran has indicated that when he did work, he was a truck driver, but due to his left ankle disability, he became unable to use a clutch, and had to quit.

The Board notes that, generally, total disability will be considered to exist when there is present any impairment of mind or body that is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340.

Total disability ratings are authorized for any disability or combination of disabilities for which the Schedule for Rating Disabilities prescribes a 100 percent disability evaluation, or, with less disability, if certain criteria are met. Id. Where the schedular rating is less than total, a total disability rating for compensation purposes may be assigned when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, or if there are two or more disabilities, there shall be at least one ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. Disabilities of one or both upper extremities, or one or both lower extremities, including the bilateral factor, and disabilities resulting from a common etiology or a single accident or disabilities affecting a single body system will be considered as one disability. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). In exceptional circumstances, where a Veteran does not meet the aforementioned percentage requirements, a total rating may nonetheless be assigned upon a showing that the individual is unable to obtain or retain substantially gainful employment. 38 C.F.R. § 4.16(b).

In reaching such a determination, the central inquiry is "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may not be given to the impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19.

When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3.

For the Veteran to prevail in a claim for TDIU, the evidence must show that he is unable to pursue a substantially gainful occupation due to his service-connected disabilities. The sole fact that a Veteran is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he or she can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993).

Service connection is in effect for the following disabilities: total left ankle replacement for residuals of left ankle fracture with failed ankle fusion (40 percent disabling); post-surgical scars, left ankle (noncompensable); and left lower extremity neuropathy (noncompensable). The Veteran's combined disability rating is 40 percent. He is thus not eligible for entitlement to a TDIU on a schedular basis, because there is no single disability rated 60 percent, and the ratings do not combine to 70 percent. 

Entitlement to a TDIU is warranted under 38 C.F.R. § 4.16(b) regardless of the Veteran's disability ratings where the service-connected disabilities alone render him unemployable. The Board cannot grant a total disability rating based on individual unemployability under 38 C.F.R. § 4.16(b) in the first instance, but must consider whether a remand for the AOJ to refer the case to the Director of Compensation Service is warranted. Bowling v. Principi, 15 Vet. App. 1, 10 (2001). For the following reasons, the Board finds that a remand to refer is not warranted.

According to the Veteran's March 2014 VA Form 21-8940, Application for Increased Compensation Based on Unemployability, the Veteran stated he is unable to work due to his service-connected left ankle disability. He reported that he last worked full-time in maintenance in August 2006. The Veteran listed prior occupations as a landscaper and truck driver. The Veteran also reported that he has a high school degree and a commercial driver's license. The Veteran also indicated that he has some data entry training and is certified in biohazardous medical waste. 

At his most recent and pertinent VA examination in May 2017, the VA examiner reported that the Veteran's left ankle disability causes some functional impairment. The examiner commented that the Veteran's left ankle disability impacts his employability because he experiences difficulty going up and down stairs, pivoting, shifting, and reaching overhead or raising on his toes. It was further noted that extended walking, running, standing, or use of left foot instrumentation such as shifters, paddles, and pedals would be prohibited. 

The above evidence reflects that the Veteran's service-connected disabilities alone have not rendered the Veteran unable to obtain and maintain substantially gainful employment. The Board has considered the Veteran's lay assertions. While it is clear that the Veteran's left ankle disability causes some functional impairment and could impact his ability to drive a truck, there is nothing in the record to suggest that the Veteran cannot obtain sedentary employment. Further, he has reported training in additional fields such as data entry and is also certified in biohazardous waste. Finally, recent VA treatment records indicate that the Veteran is currently enrolled in college and he has reported an interest in obtaining future employment after he graduates.

After considering the totality of the record, the Board finds that the preponderance of the evidence reflects that the Veteran's service-connected disabilities alone have not precluded him from obtaining and maintaining substantially gainful employment. The benefit of the doubt doctrine is thus not for application and the claim must therefore be denied. 38 U.S.C.A. § 5107(b).


ORDER

Entitlement to a rating in excess of 40 percent for a left ankle disability for the period beginning August 1, 2012 is denied. 

Entitlement to a total disability rating based on individual unemployability (TDIU) is denied.


____________________________________________
MICHAEL D. LYON 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs