Citation Nr: 1826244 
Decision Date: 04/27/18 Archive Date: 05/07/18

DOCKET NO. 13-24 496 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Albuquerque, New Mexico


THE ISSUES

1. Entitlement to a compensable rating for bilateral hearing loss. 

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU).


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

C. Banks, Associate Counsel




INTRODUCTION

The Veteran served on active duty including from March 1977 to June 1977 and from September 1985 to February 1986. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Albuquerque, New Mexico.

This matter was previously remanded by the Board for additional development in June 2015 and September 2017. It has been returned to and is now before the Board again for further adjudication.


FINDINGS OF FACT

1. The preponderance of the evidence indicates that throughout the period on appeal, the Veteran's bilateral hearing loss has not been worse than a Level II impairment in each ear.

2. The preponderance of the evidence indicates that throughout the period on appeal, the Veteran's service-connected disabilities did not preclude substantially gainful employment.


CONCLUSIONS OF LAW

1. A rating in excess of zero percent is not warranted for bilateral hearing loss. 38 U.S.C. §§ 1155, 5103, 5103A, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.3, 4.7, 4.85, 4.86(a), Diagnostic Code (Code) 6100 (2017).

2. The criteria for TDIU have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.321, 3.340, 3.341, 4.16 (2017).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. VA's Duties to Notify and Assist

As a preliminary matter, the Board has reviewed the claims file and finds that there exist no deficiencies in VA's duties to notify and assist that would be prejudicial and require corrective action prior to a final Board determination. See 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159; see also Bryant v. Shinseki, 23 Vet. App. 488 (2010) (regarding the duties of a hearing officer); Mayfield v. Nicholson, 20 Vet. App. 537 (2006) (corrective action to cure a 38 C.F.R. § 3.159(b) notice deficiency); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004) (timing of notification).

In this regard, the Board specifically acknowledges that the Veteran claims that, when opining on the severity of his hearing loss, the "VA examiner did not consider his not being able to hear conversations while in crowds or when around background noises, that prevent him from hearing." See Appellant's Brief received in March 2018. However, the Board notes that the Veteran has been afforded five VA examinations for the purpose of assessing the severity of his hearing loss (all of which were conducted by the same examiner). In the June 2013, March 2016, May 2016 and December 2017 examination opinions, the examiner indicated that the Veteran's claims file was reviewed in connection with each of those examinations. At those times, the claims file included VA treatment records which contain notations of the Veteran's reports to his doctors that he was having difficulty hearing under such circumstances, including difficulty hearing his students when working as a teacher. Additionally, in the December 2017 examination opinion, the examiner specifically mentioned that the Veteran reported that he cannot hear if there is any background noise and cannot hear females well. Thus, the Board finds that the preponderance of the evidence indicates that the examiners did adequately consider the Veteran's claimed difficulty hearing when in crowds or noisy environments, contrary to his aforementioned contention set forth in that March 2018 Appellant's Brief. 

The Board also notes that, to the full extent possible, VA complied with all prior remand instruction requests, and there exist no deficiencies in VA's duties to notify and assist in that regard. See Stegall v. West, 11 Vet. App. 268 (1998) (a remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order); but see D'Aries v. Peake, 22 Vet. App. 97, 104 (2008) (it is only substantial compliance, rather than strict compliance, with the terms of a remand that is required).

II. Increased Rating for Bilateral Hearing Loss

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity caused by the given disability. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. Part 4. Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). The Veteran's entire history is to be considered when making a disability determination. 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). When a question arises as to which of two ratings applies under a particular code, the higher rating is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining, including regarding degree of disability, is resolved in favor of the Veteran. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3. 

Disability ratings for hearing loss are derived by a mechanical application of the rating schedule to the numeric designations assigned after audiometric evaluations are performed. See Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). Hearing loss disability evaluations range from 0 to 100 percent based on organic impairment of hearing acuity, as measured by controlled speech discrimination tests in conjunction with the average hearing threshold, as measured by pure tone audiometric tests in the frequencies 1000, 2000, 3000 and 4000 cycles per second. 
The rating schedule establishes 11 auditory acuity levels designated from Level I for essentially normal hearing acuity, through Level XI for profound deafness. VA audiometric examinations are conducted using a controlled speech discrimination test together with the results of a pure tone audiometric test. The horizontal lines in Table VI (in 38 C.F.R. § 4.85) represent nine categories of the percentage of discrimination based on the controlled speech discrimination test. The vertical columns in Table VI represent nine categories of decibel loss based on the pure tone audiometric test. The numeric designation of impaired hearing (Levels I through XI) is determined for each ear by intersecting the horizontal row appropriate for the percentage of discrimination and the vertical column appropriate to the pure tone decibel loss. The percentage evaluation is found from Table VII (in 38 C.F.R. § 4.85) by intersecting the horizontal row appropriate for the numeric designation for the ear having the better hearing acuity and the appropriate vertical column to the numeric designation level for the ear having the poorer hearing acuity. See 38 C.F.R. § 4.85(e). 

Preliminarily, the Board notes that the most recent coded rating decision of record (May 2016) lists separate ratings for right ear hearing loss and left ear hearing loss, whereas the November 2017 Supplemental Statement of the Case lists a single bilateral hearing loss disability. Given that the audiological findings of record fall far short of a compensable hearing loss disability for either ear, or in combination, the Board need not further address this discrepancy.

In this case, the Veteran claims entitlement to an increased and compensable evaluation for his service-connected bilateral hearing loss, which is currently evaluated as zero percent disabling. He claims, more specifically, that he has a worse impairment than is required by 38 C.F.R. § 3.385. See VA Form 9, Appeal to Board of Veterans' Appeals received in August 2013. The Board notes in this regard that 38 C.F.R. § 3.385 sets forth the criteria for when impaired hearing is to be considered a disability, under VA laws and regulations. So essentially, the Veteran claims that he is entitled to a compensable evaluation for his hearing loss because he has an impaired hearing that is a disability, by VA standards. However, the Board notes at the outset that just because the Veteran has a hearing loss disability does not mean that he is entitled to a compensable evaluation therefor. See 38 C.F.R. § 4.85. The Veteran also generally claims that his hearing loss is more disabling than currently evaluated. See Appellant's Brief received in February 2015. A review of the claims file does not reveal any medical records or other competent evidence indicating that the Veteran's bilateral hearing loss is severe enough to warrant an increased evaluation. 

The only evidence of record that gives any indication as to the specific level of severity of the Veteran's hearing loss during the period on appeal are the reports from the relevant VA examinations, which were performed in January 2011, June 2013, March 2016, May 2016 and December 2017. Out of these five examinations, the most severe findings during the pendency of this appeal come from the December 2017 VA examination. At that time, his puretone threshold average was 45 in the right ear and 43 in the left, and his speech recognition score was 86 in the right and 88 in the left. No examiner has indicated that the use of the speech discrimination test results was inappropriate, for any reason, in the Veteran's case. Thus, Table VI in 38 C.F.R. § 4.85 is to be used in determining the appropriate Roman numeral designation for the Veteran's hearing impairment based on his puretone threshold averages and speech discrimination scores. Accordingly, the percentage evaluation to be assigned based thereon is found in Table VII. See 38 C.F.R. § 4.85. Based on the aforementioned audiological findings and the aforementioned tables, the Veteran has had no worse than a Level II hearing impairment in each ear, throughout the period on appeal, which, per Table VII, warrants a zero percent (i.e., noncompensable) disability evaluation.

In reviewing the findings in this case, the Board has given full consideration to the functional effects of hearing loss. The Board acknowledges that the Veteran has reported that he cannot hear well in crowds and noisy environments, cannot hear women's voices well, and had difficulty hearing his former students' voices, but the Board does not find that these claimed symptoms and difficulties are inconsistent with the assigned evaluation and the corresponding audiological findings. See Martinak v. Nicholson, 21 Vet. App. 447 (2007).

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).
III. TDIU

TDIU is assigned when a Veteran's service-connected disabilities result in such impairment of mind or body that the average person would be precluded from following a substantially gainful occupation. 38 C.F.R. §§ 3.340, 4.15. If there is only one service-connected disability, it must be rated at 60 percent or more; if there are two or more service-connected disabilities, at least one must be rated at 40 percent or more and the combined rating must be at least 70 percent. 38 C.F.R. § 4.16(a). For purposes of meeting the percentage threshold for TDIU eligibility, disabilities of one or both lower extremities, including the bilateral factor; disabilities resulting from a common etiology or a single accident; or disabilities affecting a single body system are considered as one disability. Id.

In analyzing the meaning of "substantially gainful employment," courts have concluded that "the test is whether a particular job is realistically within the physical and mental capabilities of the claimant." Moore v. Derwinski, 1 Vet. App. 356, 359 (1991), citing Timmerman v. Weinberger, 510 F.2d 439, 442 (8th Cir. 1975). Accordingly, a Veteran need not establish "100 percent unemployability" to prove an inability to maintain a "substantially gainful occupation"; the use of the word "substantially" suggests an intent to impart flexibility into a determination of the Veteran's overall employability. Roberson v. Principi, 251 F.3d 1378, 1385 (Fed. Cir. 2001).

In determining whether unemployability exists, consideration may be given to the Veteran's level of education, special training, and previous work experience, but not to age or to any impairment cause by nonservice-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19. Unlike the general disability rating schedule, which is based on the average work-related impairment caused by a disability, a claim for "entitlement to TDIU is based on an individual's particular circumstances." Rice v. Shinseki, 22 Vet. App. 447, 452 (2009). Therefore, in adjudicating a TDIU claim, VA must take into account the individual Veteran's education, training, and work history. See Hatlestad v. Derwinski, 1 Vet. App. 164 (1991) (noting that the level of education is a factor in deciding employability).

Regulations provide that if the above-mentioned percentage requirements for TDIU on a schedular basis are not met, TDIU may still be granted on an extraschedular basis in exceptional cases when the Veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disability. 38 C.F.R. §§ 3.321(b), 4.16(b). In Bowling v. Principi, 15 Vet. App. 1, 10 (2001), however, the United States Court of Appeals for Veterans Claims (Court), citing its decision in Floyd v. Brown, 9 Vet. App. 88, 94-97 (1995), held that the Board cannot award TDIU under 38 C.F.R. § 4.16(b) in the first instance because that regulation requires that the RO first submit the claim to the Director of Compensation and Pension Services for extraschedular consideration.

In this case, the Veteran's service-connected disabilities throughout the period on appeal have included: tinnitus, rated as 10 percent disabling from November 23, 2010; right ear hearing loss, rated as 0 percent disabling from February 24, 1997; and left ear hearing loss, rated as 0 percent disabling from November 23, 2010. His combined evaluation has been 0 percent from February 24, 1997 and 10 percent from November 23, 2010. Thus, the Veteran has not met the 38 C.F.R. § 4.16(a) schedular requirements for TDIU throughout the period on appeal.

The Veteran claims that he is unable to obtain or maintain gainful employment as a result of his service-connected disabilities. See Appellant's Post-Remand Brief received in March 2018. During his December 2017 VA examination, he stated that he had to quit a teaching job because he could not hear his students well, but he did also say that he was working at Home Depot at the time. See Hearing Loss and Tinnitus Disability Benefits Questionnaire (DBQ) received in December 2017. He reported that he has two master's degrees and cannot work in his field of expertise, as a teacher, because of his inability to hear his students. Aside from these statements by the Veteran, however, there is no other competent evidence in the claims file that indicates, in the Board's judgement, that the Veteran is indeed unable to secure or follow substantially gainful employment. His VA treatment records do reflect that he has complained of difficulty hearing his students when working as a teacher, but they do not indicate that he is unable to obtain or maintain gainful employment in general. The Veteran was asked to provide additional evidence of his unemployability, including but not limited to in October 2017, but did not provide any such additional information.

As indicated above, the reports from the Veteran's VA audiological examinations reflect that his hearing loss is relatively mild. Those examinations were performed on five separate occasions at different points in time throughout the period on appeal. The examiner opined in each of those examinations that the Veteran's tinnitus does not impact his ordinary conditions of daily life, including his ability to work. In the December 2017 VA examination report, the examiner opined that "[t]he [V]eteran's hearing loss may be a barrier to a wide range of employment settings" and that "[h]e would have trouble working well in very noisy environments, and in environments which required him to often use non face-to-face communications equipment (such as speakers, intercoms, etc.)." The Board notes, however, that that opinion still falls well short of indicating that the Veteran is unable to obtain or maintain gainful employment more generally, including outside of teaching.

Overall, the preponderance of the evidence strongly supports the conclusion that the Veteran's service-connected tinnitus and bilateral hearing loss disabilities do not render him unable to secure and follow a substantially gainful occupation. Consequently, the evidence presents no basis for a 38 C.F.R. § 4.16(b) extraschedular referral, and the claim must be denied. 38 U.S.C. § 5107(b).


ORDER

Entitlement to a compensable rating for bilateral hearing loss is denied. 

Entitlement to TDIU is denied.


____________________________________________
A. C. MACKENZIE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs