Citation Nr: AXXXXXXXX
Decision Date: 07/31/21 Archive Date: 07/31/21

DOCKET NO. 200721-98253
DATE: July 31, 2021

ORDER

A rating in excess of 10 percent for degenerative joint disease (DJD) and chondromalacia of the left knee is denied.

A rating in excess of 10 percent for DJD and chondromalacia of the right knee is denied.

A separate 20 percent rating, but no higher, for instability of the left knee is granted.

A separate 20 percent rating, but no higher, for instability of the right knee is granted.

From January 22, 2018, a separate 20 percent rating for dislocated semilunar cartilage of the left knee is granted.

From January 22, 2018, a separate 20 percent rating for dislocated semilunar cartilage of the right knee is granted.

A total disability rating based on individual unemployability (TDIU) from January 22, 2018, is granted.

REMANDED

Entitlement to a TDIU, prior to January 22, 2018, is remanded.

FINDINGS OF FACT

1. During the period on appeal, the Veteran's service-connected DJD with chondromalacia of the left knee manifested with flexion limited to 55 degrees, at worst, with pain and had full extension.

2. During the period on appeal, the Veteran's service-connected DJD with chondromalacia of the right knee manifested with flexion limited to 55 degrees, at worst, with pain and had full extension.

3. Throughout the appeal period, the Veteran's left knee manifested with no more than moderate instability; the evidence has not shown that an assistive device has been prescribed by a medical provider.

4. Throughout the appeal period, the Veteran's right knee manifested with no more than moderate instability; the evidence has not shown that an assistive device has been prescribed by a medical provider.

5. Resolving reasonable doubt in favor of the Veteran, from January 22, 2018, the semilunar cartilage of his left and right knee manifested with frequent episodes of "locking," pain, and effusion into the joint.

6. Resolving all reasonable doubt in favor of the Veteran, beginning January 22, 2018, his service-connected bilateral knee disability prevented him from securing or maintaining substantially gainful employment.

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for degenerative joint disease (DJD) and chondromalacia of the left knee have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code (DC) 5260.

2. The criteria for a rating in excess of 10 percent for degenerative joint disease (DJD) and chondromalacia of the right knee have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, DC 5260.

3. The criteria for a separate 20 percent rating, but no higher, for instability of the left knee have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, DC 5257.

4. The criteria for a separate 20 percent rating, but no higher, for instability of the right knee, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, DC 5257.

5. The criteria for a separate 20 percent rating for dislocated semilunar cartilage of the left knee, from January 22, 2018, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, DC 5258.

6. The criteria for a separate 20 percent rating for dislocated semilunar cartilage of the right knee, from January 22, 2018, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, DC 5258.

7. The criteria for a TDIU from January 22, 2018, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.340, 3.341, 4.1, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from October 1971 to October 1974.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a July 2011 rating decision issued under the legacy appeal system by the Department of Veterans Affairs (VA) Regional Office (RO).

In November 2016, the Veteran testified at a hearing before a different Veterans Law Judge under the legacy appeal system. A copy of the transcript from this proceeding is associated with his claims file.

In October 2017 and April 2019, the Board remanded these matters for further development, which has since been completed.

Within 60 days of the issuance of a July 2020 supplement statement of the case (SSOC), the Veteran opted into the modernized review system. On his July 2020 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Hearing docket. He presented sworn testimony at a hearing before the undersigned in January 2021.

Based on the procedural history, the Board may only consider the evidence of record at the time of the July 2011 rating decision up to the July 2020 SSOC on appeal, as well as any evidence submitted by the Veteran or his representative at the hearing or within 90 days following the hearing. 38 C.F.R. § 20.302(a). 

In February 2021, the Veteran's representative submitted a statement waiving the remainder of the 90-day period following the hearing. See 38 C.F.R. § 20.300(b).

Evidence was added to the claims file during a period of time when new evidence was not allowed. As the Board is deciding the claims of a higher rating for the bilateral knee disability, it may not consider this evidence in its decision. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

1. Entitlement to a rating in excess of 10 percent for DJD and chondromalacia of the left knee.

2. Entitlement to a rating in excess of 10 percent for DJD and chondromalacia of the right knee.

The Veteran seeks a rating in excess of 10 percent for service-connected degenerative joint disease (DJD) and chondromalacia of the bilateral knee, which is currently rated under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5260, for limitation of flexion. Specifically, the Veteran testified that both of his knees swell up, are painful, flares-up, and are unstable and weak. See January 2021 Hearing transcript, pages 2-5.

As the claim for a higher rating was received on October 18, 2010, the relevant period for review pre-dates the filing of the claim by one year. See October 2010 VA Form 21-526b; Gaston v. Shinseki, 605 F.3d 979, 982 (Fed. Cir. 2010).

During the pendency of the appeal, the rating criteria for evaluating musculoskeletal disabilities under 38 C.F.R. § 4.71a were amended effective February 7, 2021. See 85 Fed. Reg. 230 (Nov. 30, 2020). When the regulations concerning entitlement to a higher rating are changed during the course of an appeal, the version more favorable to the Veteran will apply, to the extent permitted by any stated effective date in the amendment in question, unless the regulatory change specifically permits retroactive application. 38 U.S.C. § 5110(g); Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003). Therefore, the Board will review the Veteran's appeal under the old criteria prior to February 7, 2021, and both the old and new rating criteria from February 7, 2021. The criteria that is more favorable to the Veteran will be applied.

Diagnostic Code 5260 provides that flexion of the leg limited to 60 degrees warrants a 0 percent (noncompensable) rating; flexion limited to 45 degrees warrants a 10 percent rating; flexion limited to 30 degrees warrants a 20 percent rating; and flexion limited to 15 degrees warrants a 30 percent rating. 38 C.F.R. § 4.71a. This diagnostic code was not revised in the new rating schedule. 

Diagnostic Code 5261 provides that a noncompensable rating is warranted for extension limited to 5 degrees; a 10 percent rating is warranted for extension limited to 10 degrees; a 20 percent rating is warranted for extension limited to 15 degrees; a 30 percent rating is warranted for extension limited to 20 degrees; a 40 percent rating is warranted for extension limited to 30 degrees; and a 50 percent rating is warranted for extension limited to 50 degrees. 38 C.F.R. § 4.71a. This code was also not revised in the new rating schedule.

For comparison, normal range of motion of the knee is from 0 degrees of extension to 140 degrees of flexion. See 38 C.F.R. § 4.71, Plate II.

After a thorough review of the evidence, the preponderance of the evidence is against a rating in excess of 10 percent for the Veteran's DJD and chondromalacia of the left and right knee disability under either the prior or revised rating criteria, for the reasons stated below. 

VA and private treatment records from 2009 to 2011 did not provide range of motion findings pertaining to his bilateral knee disability, but an October 2010 VA treatment record noted he was seen for complaints of pain in his joints and x-ray imaging showed DJD of the knees.

At a January 2011 VA examination for joints, the Veteran reported bilateral knee swelling and pain. The examiner found he had pain, stiffness, and weakness of both knees, but did not find for instability, locking, or subluxation. He had right knee effusion. The Veteran reporting being able to walk for more than 1/4 of a mile, but less than one-mile total. He had no limitations on standing and did not need an assistive device at the time. The Veteran had a normal gait and was able to perform weightbearing testing. Range of motion testing showed flexion to 140 degrees and extension to 0 degrees, which was within normal limits, but he did exhibit pain. No ankylosis was found. The examiner noted his bilateral knee pain affected daily activities.

At his November 2016 Board hearing under the legacy appeal system, the Veteran testified that he has very poor stability and strength in his knees. He reported falling down in the shower and on the ground several times and now had to wear knee braces. See November 2016 Hearing Transcript, page 3.

Records received from Social Security Administration (SSA) in October 2017 reflected the Veteran applied for disability benefits in part, due to his knees.

From 2011 to 2018, there was only a July 2011 VA treatment record where the Veteran complained of chronic pain in various joints, including in his knees. He described the pain as aching, heavy, numbing, pinching, sharp, tender, and throbbing. His pain was worse with lifting, sitting, standing, and walking.

Pursuant to the 2017 Board remand, the Veteran was afforded a VA contract examination in January 2018 (cited to as the February 2018 examination in the prior remand). He reported that his bilateral knee pain increased when swollen, and he had limited range of motion, and instability. The Veteran reported falling about 3 to 4 times per month. The pain was an 8 out of 10. The examiner noted he had daily flare-ups, which were described as a "more exacerbated pain than normal" where he had difficulties getting off his couch or bed. Flexion for his right knee was limited to 80 degrees, with extension to 0 degrees. On his left knee, flexion was to 90 degrees, with extension to 0 degrees. The examiner noted moderate pain on passive and active range of motion testing, and on weightbearing and non-weightbearing testing. The Veteran was able to perform repetitive-use testing. The examiner noted right knee flexion was to 65 degrees, and that pain, fatigue, weakness, and lack of endurance caused the range of motion loss. There was no loss in flexion in his left knee. No ankylosis was found in either knee. 

The examiner also found there was no recurrent subluxation, instability, or recurrent effusion. The joint stability tests were normal. The examiner found that he had a meniscus condition in both knees that exhibited frequent episodes of joint "locking" and pain. For his left knee, the examiner noted the Veteran has had a meniscal tear and that he had left knee meniscus repair surgery in July 2001. The Veteran regularly used a brace for bilateral knee stability and cane for gait stability; he occasionally used a walker for gait stability purposes.

Subsequently and per the Board's 2019 remand, the Veteran underwent another VA contract examination in November 2019. The Veteran reported that his knees were stiff and swollen, and he could hardly hold his weight up. He fell out of the shower about once a month and can only walk about 10 minutes. The Veteran also reported that his knee popped and swelled. His knees interfered with walking more than 10 minutes, bending, kneeling, sitting, and standing. His left knee flared up once a month by swelling, which then would last one week. Range of motion findings showed flexion of the right knee to 85 degrees and left knee to 80 degrees, with pain. Extension was to 0 degrees for both knees. Pain was noted on both flexion and extension. There was moderate severity of pain on palpation of the knees. The Veteran was able to perform repetitive-use testing. Pain significantly limited functional ability over time. Range of motion findings after repetitive-use testing was flexion to 60 degrees in his right knee and to 70 degrees in his left knee. Passive non-weightbearing and weightbearing testing showed flexion in both knees was to 55 degrees. There was no ankylosis. Joint stability tests were normal in both knees. The examiner noted he did not have a meniscus condition. The Veteran was noted to use his brace and cane regularly.

At the hearing before the undersigned in January 2021, the Veteran testified that he continued to have poor stability and strength in his knees. He still fell often and has to use a cane and wear knee braces all the time. See January 2021 Hearing Transcript, pages 5-6. The Veteran testified that his knees were still swollen, with his right knee worse than his left. See Id., page 8. He testified that his bilateral knee disability has affected his abilities to walk, stand in a boat to go fishing, or walk his dogs. See Id., page 15.

Within 90 days of the Board hearing, the Veteran's representative submitted a private disability benefits questionnaire (DBQ) in February 2021 by Dr. W.F. The examination took place on January 28, 2021. Range of motion findings showed flexion limited to around 90 degrees and extension to 0 degrees in both knees. Dr. W.F. noted the Veteran wore knee braces and that his instability was moderately severe in his right knee, but only slightly severe in his left. He had swelling in both knees.

Based on review of the evidence, a rating in excess of 10 percent for DJD and chondromalacia of the left and right knee disability based on limitations of motion is not warranted.

The Veteran is currently compensated for symptoms related to chronic bilateral knee pain and weakness and for experiencing functional loss due to limited or excess movement, pain, weakness, excess fatigability, or incoordination (to include during flare-ups or with repeated use). See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 204-07 (1995); see also Burton v. Shinseki, 25 Vet. App. 1 (2011). A 20 percent rating would require bilateral knee flexion limited to 30 degrees and extension limited to 15 degrees, which has not been shown or more nearly approximated at any time during the appeal period.

Rather, the evidence showed bilateral knee flexion was at worst, to 55 degrees, with pain; extension has been 0 degrees consistently throughout the period on appeal. This includes taking into consideration the Veteran and his representative's arguments and testimonies of severity and that he has less movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement under the DeLuca factors. When looking at the rating criteria under either DC 5260 or 5261, these findings more nearly approximates a noncompensable, or 0 percent rating. Although the Veteran's painful motion is significant, and the Board sympathizes he is experiencing such pain, there is no indication that it has resulted in further limitation of motion than what was shown on examinations, to include the private DBQ. Therefore, the Board cannot assign a rating higher than the current 10 percent under DC 5260 or DC 5261.

The Board has also considered the other diagnostic codes pertaining to the knee and leg. Other disability ratings may be assigned only if the symptomatology for a disability is not duplicative or overlapping with the symptomatology of any other disability. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994); Lyles v. Shulkin, 29 Vet. App. 107 (2017) (holding that 38 C.F.R. § 4.14 prohibits paying compensation twice for the same symptoms or functional impairment).

However, after review, a higher or separate rating is not available under Diagnostic Codes 5256, 5262, 5263 as the evidence of record indicates the Veteran does not have ankylosis of the left knee, impairment of the tibia and fibula, or genu recurvatum. The Board will discuss assignment of separate ratings under Diagnostic Codes 5257, 5258, and 5259 in the sections below, as applicable.

In conclusion, the preponderance of the evidence is against the Veteran's claim for a rating in excess of 10 percent for DJD and chondromalacia of the left and right knee; the benefit of the doubt doctrine is not applicable as a result. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.

3. Entitlement to a separate rating for instability of the left knee.

4. Entitlement to a separate rating for instability of the right knee.

Based on the above, the assignment of a separate 20 percent ratings under DC 5257 for right and left knee instability for the entire period on appeal. In this case, the Veteran has consistently reported bilateral knee instability symptomology.

Generally, separate ratings can be assigned for knee disabilities (e.g., Diagnostic Codes 5257, 5258, 5259, 5260, and 5261) when none of the symptomatology overlaps and the separate rating is based on additional disabling symptomatology. See VAOPGCPREC 23-97, 62 Fed. Reg. 63,603 (1997); VAOPGCPREC 9-98, 63 Fed. Reg. 56,703 (1998); VAOPGCPREC 9-2004; 69 Fed. Reg. 59,988 (2004); Lyles, supra.

Prior to the regulatory change, recurrent subluxation and lateral instability of the knee warrants a 10, 20, or 30 percent rating if it is slight, moderate, or severe, respectively. 38 C.F.R. § 4.71a, DC 5257.

According to MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 999 (11th Ed. 2007), "slight" means small in amount. "Moderate" means limited in scope or effect. "Severe" means very painful or harmful or of a great degree. 

Objective medical evidence is not required to establish lateral knee instability under Diagnostic Code 5257, so objective medical evidence cannot be categorically found more probative than lay evidence with respect to this diagnostic code. See English v. Wilkie, 30 Vet. App. 347, 352-53 (2018).

As of February 7, 2021, under the amended criteria, DC 5257 still applies to other impairment of the knee but is now separated into impairments of recurrent subluxation or instability or patellar instability. 

For recurrent subluxation or instability of the knee, a 10 percent rating is now warranted where there is sprain, incomplete ligament tear, or complete ligament tear (repaired, unrepaired, or failed repair) causing persistent instability, without a prescription from a medical provider for an assistive device (e.g., cane(s), crutch(es), walker) or bracing for ambulation. 

A 20 percent is warranted if either: 

a. Sprain, incomplete ligament tear, or repaired complete ligament tear causing persistent instability, and a medical provider prescribes a brace and/or assistive device (e.g., cane(s), crutch(es), walker) for ambulation; or 

b. Unrepaired or failed repair of complete ligament tear causing persistent instability, and a medical provider prescribes either an assistive device (e.g., cane(s), crutch(es), walker) or bracing for ambulation, is present. 

A 30 percent is warranted for unrepaired or failed repair of complete ligament tear of the knee causing persistent instability, and a medical provider prescribes both an assistive device (e.g., cane(s), crutch(es), walker) and bracing for ambulation. 

For patellar instability of the knee, a 10 percent is warranted for a diagnosed condition involving the patellofemoral complex with recurrent instability (with or without history of surgical repair) that does not require a prescription from a medical provider for a brace, cane, or walker. 

A 20 percent is warranted for a diagnosed condition involving the patellofemoral complex with recurrent instability after surgical repair that requires a prescription by a medical provider for one of the following: A brace, cane, or walker. 

A 30 percent is warranted for a diagnosed condition involving the patellofemoral complex with recurrent instability after surgical repair that requires a prescription by a medical provider for a brace and either a cane or a walker. 

Given the evidence of record, the Veteran's left and right knee have presented with instability that is moderate throughout the period on appeal, based on both the old and new criteria. This is based on the Veteran's competent, consistent, and credible testimonies that he feels weak in his knees and has fallen multiple times out of the shower or on the ground. See also November 2017 VA examination; January 2018 and November 2019 VA contract examinations. This evidence supports the assignment of a compensable rating for instability. See English v. Wilkie, 30 Vet. App. 347 (2018). Affording doubt to the Veteran and given the frequency of his falls, the Board finds his knee symptoms are moderate in severity for instability during the period on appeal.

The Board has also considered a higher rating under the revised criteria under DC 5257; however, the objective evidence has not shown that a medical provider has prescribed an assistive device for ambulation at any time after the revised criteria went into effect. While the Board acknowledges that the Veteran has fallen, at worst, 3 to 4 times per month, the objective medical evidence has shown that his joint stability tests were consistently normal, to which the Board assigns more probative weight in terms of severity. As a result, an even higher 30 percent rating is not warranted.

In short, a separate 20 percent rating, but no higher, for instability of the left and right knees, but no higher, is warranted.

5. Entitlement to a separate 20 percent rating for dislocated semilunar cartilage of the left knee, from January 22, 2018.

6. Entitlement to a separate 20 percent rating for dislocated semilunar cartilage of the right knee, from January 22, 2018.

Given the evidence of record, the Board resolves doubt in favor of the Veteran and awards a separate 20 percent rating under DC 5258 for both knees, from January 22, 2018. See January 2018 VA contract examination.

The rating schedule provides that dislocation of semilunar cartilage, with frequent episodes of "locking," pain, and effusion into the joint, warrants a 20 percent evaluation. 38 C.F.R. § 4.71a, DC 5258. DC 5259 provides for the assignment of a maximum 10 percent rating based on symptomatic removal of the semilunar cartilage. These codes were not affected by the new revisions.

In determining whether a separate rating is warranted under DC 5258 and 5259, the Board must decide whether separate and distinct symptoms exist or whether there is overlapping symptomatology such that only a single rating is appropriate. The critical element in permitting the assignment of more than one evaluation under different diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of another condition. Esteban, 6 Vet. App. 259.

Although the VA or VA contract examinations in January 2011, and November 2019 showed no objective evidence of a meniscus condition, the Board notes that the January 2018 VA contract examiner noted there was a meniscus condition indicated by frequent episodes of joint locking and joint pain in both knees. See January 22, 2018, VA contract examination. In addition, the Veteran complained of frequent swelling of the knees, which he is competent to do. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). As such, and affording the Veteran all reasonable doubt, the Board finds that the Veteran has suffered from semilunar cartilage damage since January 2018 and that a separate 20 percent rating is warranted under Diagnostic Code 5258 starting January 22, 2018. See 38 C.F.R. § 4.20; see also Lyles v. Shulkin, supra. The Board finds that the date of the January 2018 VA contract examination, January 22, 2018, was the earliest date ascertainable in the record where the Veteran has shown all three elements of DC 5258 (joint "locking," pain, and effusion). See Swain v. McDonald, 27 Vet. App. 219, 224 (2015) (holding that the effective date for an increased rating is predicated on when the increase in the disability can be ascertained).

DC 5259 is not for consideration, as the Veteran has not undergone surgery to remove the meniscus (semilunar cartilage) in either knee at any time during the period on appeal.

A review of the record does not show that there are any other compensable conditions for which the Veteran's bilateral knees could receive an additional rating. Thus, the Board is satisfied that the Veteran has received the maximum benefits available to him.

7. Entitlement to a TDIU from January 22, 2018.

The Veteran contends that he is not able to work due to depression, stomach, right wrist, ankle pains, and due to his service-connected bilateral knee disability. See May 2020 VA Form 21-8940. Accordingly, the issue has been added, as a claim for a TDIU has been raised by the evidence of record. Rice v. Shinseki, 22 Vet. App. 447 (2009).

A TDIU may be assigned where the schedular rating is less than total and it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of either (1) a single service-connected disability ratable at 60 percent or more, or (2) two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). For the purposes of determining rating level, disabilities resulting from a common etiology or affecting a single body system are considered a single disability. 38 C.F.R. § 4.16(a).

The Court has held the phrase "substantially gainful employment" has an economic component and a non-economic component. Ray v. Wilkie, 31 Vet. App. 58, 73 (2019). "The economic component simply means an occupation earning more than marginal income (outside of a protected environment) as determined by the U.S. Department of Commerce as the poverty threshold for one person." Id. The noneconomic component goes to the veteran's individualized ability to secure and follow substantially gainful employment. Ray, 31 Vet. App. at 73. Attention must be given to the veteran's history, education, skill, and training; whether the veteran has the physical ability (both exertional and non-exertional) to perform the type of activities (e.g., sedentary, light, medium, heavy, or very heavy); and whether the veteran has the mental ability to perform the activities required by the occupation at issue. Id. 

After the grant of separate ratings related to his service-connected left and right knee, the Veteran is now service-connected for instability of the left knee (rated at 20 percent); instability of the right knee (rated at 20 percent); dislocation of semilunar cartilage of the left knee (rated at 20 percent); dislocation of the semilunar cartilage of the right knee (rated at 20 percent); chondromalacia of the left knee (rated at 10 percent); chondromalacia of the right knee (rated at 10 percent); acne vulgaris of the face (rated at 10 percent); residuals of fracture of the left mandible (rated at 0 percent), and left knee scar (rated at 0 percent). His combined ratings beginning January 22, 2018, is at 80 percent. As the ratings of the knee are considered at single disability and are now at 70 percent beginning January 22, 2018, the schedular criteria under 38 C.F.R. § 4.16(a) have been met from that date.

As a result, the Board has the ability to adjudicate the claim for a TDIU from January 22, 2018, and has characterized the issues accordingly. The period prior will be discussed in the remanded section below.

The record shows the Veteran obtained a general education diploma and received training to obtain a trucking driver's license. The Veteran has worked as a truck driver since separation from service. See May 2020 VA Form 21-8940. His SSA disability benefits application showed that he last worked on October 25, 2010, and stopped working in part due to his service-connected bilateral knee disability. 

As an initial matter, of the disabilities listed by the Veteran, the Board notes that only service-connected disabilities may be considered for TDIU purposes. Therefore, the question for the Board, beginning January 22, 2018, is whether the Veteran's bilateral knee disability prevents him from securing or maintaining gainful employment. 

After review, the Board finds that a TDIU is warranted, beginning January 22, 2018.

There are several VA medical opinions of record where the Veteran stated his service-connected bilateral knee disability precluded his ability to secure or follow substantially gainful employment. See VA and VA contract examinations (January 2018, and November 2019).

At the January 2018 VA contract examination, the examiner found that the Veteran would have difficulties driving for long distances, driving manual clutches, and difficulties with prolonged sitting, standing, lifting, and bending.

The November 2019 VA contract examiner found that the Veteran's knees interfered with walking more than 10 minutes, kneeling, driving with knee braces, sitting with knees bent for longer than 30 minutes, standing more than 10 minutes without his knee braces, and was prone to falling.

In January 2021, Dr. W.F. found that he was unable to maintain any job duties for an extended time. Specifically, Dr. W.F. found that he could only walk 100 feet without rest and that his pain and swelling would increase beyond that. In an 8-hour day, he would be capable of sitting for a total of one hour and would only be able to stand or walk for a total of 10 minutes. His knee pain would prevent him from lifting more than five pounds.

VA treatment records showed treatments for chronic pain and multiple reports of falls at home.

At the outset, the Board finds that the economic component under Ray has been met; the Veteran has not worked since October 2010.

After review of the above lay and medical evidence, the Board finds that the Veteran's ability to secure and follow a substantially gainful occupation is impacted by the physical effects of his service-connected bilateral knee disability and thus, met the noneconomic component under Ray. 

Generally, the treatment records and VA contract and VA examination reports reflect the Veteran's service-connected physical disabilities result in physical limitations, such as difficulties standing, sitting, or walking. 

Based on his prior work experience, it is reasonable to conclude that the Veteran would not be able to follow substantially gainful employment consistent with his education, skills, and work experience beginning January 22, 2018. His inabilities to sit with knees bent for longer than 30 minutes, difficulties driving for long distances, lifting, and bending, would undoubtedly affect his ability to safely drive a truck or perform duties required of a truck driver prior to actually driving the truck. The Board finds that his inabilities to bend or sit for long periods of time in an 8-hour workday would also reasonably preclude him from performing non-physical types of work tasks. 

Thus, resolving reasonable doubt in the Veteran's favor, his service-connected bilateral knee disability reasonably preclude him from securing or following substantially gainful employment, beginning January 22, 2018. Accordingly, a TDIU is granted from January 22, 2018.

REASONS FOR REMAND

Entitlement to a TDIU, prior to January 22, 2018, is remanded.

Prior to January 22, 2018, the criteria for a TDIU under 38 C.F.R. § 4.16(a) are not met, even after the awards of separate ratings in this decision or counting these ratings as a single body system. However, even when the criteria under 38 C.F.R. § 4.16(a) are not met, entitlement to a TDIU on an extraschedular basis may be considered when the Veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. See 38 C.F.R. § 4.16(b).

Since a TDIU was added to the appeal based on Rice, the Board finds that the relevant period for review begins one year prior to October 18, 2010, the date he filed a claim for an increased rating. See October 2010 VA Form 21-526b; Gaston v. Shinseki, 605 F.3d 979, 982 (Fed. Cir. 2010).

As noted earlier, the Veteran has not worked since October 25, 2010, and he contends his service-connected bilateral knee disability prevents him from obtaining and maintaining substantially gainful employment.

In this case, the Board does not have the authority to assign an extraschedular TDIU in the first instance. Bowling v. Principi, 15 Vet. App. 1 (2001). Therefore, a remand is warranted for referral to the Director, Compensation Service, for consideration of entitlement to a TDIU. As this issue was raised by the record prior to the decision on appeal, the Board finds that remand is appropriate to correct a pre-decisional duty to assist error.

(Continued on the next page)

 

The matter is REMANDED for the following action:

Refer the Veteran's claim for TDIU, prior to January 22, 2018, to VA's Director, Compensation Service, for extraschedular consideration.

 

 

TRACIE N. WESNER

Acting Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board M. Tang, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.